CLARENCE SHOEMAKER, by his next friend, A. H. Shoemaker, v. D. W. JACKSON, Appellant.

**Parent and child:** LOSS OF SERVICES: INJURY TO CLOTHING: RECOVERY OF DAMAGES. The father of a minor may recover damages for any injury to the child's clothing, loss of services and medical attendance, occasioned by the wrongful act of another.

**Conspiracy:** EVIDENCE: LIABILITY OF CONSPIRATORS. Evidence reviewed and held admissible for the purpose of showing that plaintiff conspired with another to deprive defendant of the custody of his daughter, and also to warrant a finding of liability for injury to the clothing and health of defendant's daughter, which was the natural result of executing the common design.

**Assault:** MITIGATION OF DAMAGES. One who makes a deliberate assault upon another cannot show a provocation in mitigation of damages.

*Appeal from Montgomery District Court.* — HON. A. B. THORNELL, Judge.

THURSDAY, JULY 13, 1905.

ACTION for damages resulted in judgment for plaintiff. The defendant appeals.— *Reversed.*

*J. M. Junkin* and *Ralph Pringle,* for appellant.

*Beeson & Pomeroy,* for appellee.

LADD, J. — One Weyer and plaintiff were walking along a street of Villisca in the afternoon of July 31, 1903, when defendant requested the latter to come up to his office. He did so, and when both were inside defendant locked the door and administered to plaintiff a severe whipping. He had provided a whip for this purpose some time previous, having deliberately decided to have Weyer arrested and to chastise Shoemaker. To the petition claiming damages the defendant ·pleaded certain facts in mitigation and also a counterclaim. The only rulings complained of are the refusal of the court to submit the issue as to mitigation and the rejection of certain evidence. The latter will be first considered. It appears that Weyer, then twenty years of age, had been paying his attentions to defendant's sixteen year old daughter, and that the plaintiff, a youth of 18 summers, was trying to court the niece of a near neighbor. The boys had seen these girls at this neighbor's house in the afternoon of July 29th, and in the evening a witness testified to having observed plaintiff hand defendant's daughter a piece of paper when the girls were at defendant's home, where they stopped that night. After the family had retired, defendant was awakened by whistling and heavy walking on the pavement. This continued some time, when he noticed a light had been struck in the girls' room. He then arose, and went downstairs to the front porch. The noise ceased at

once, and he returned to his couch. This was repeated. The third time he noticed a person get in range with the window in the girls' room, whistle and stamp, and by going about the house he found such person to be Weyer, who, after being scolded left. Immediately afterwards the plaintiff stepped from behind a tree, and in the conversation which followed stated that they were watching to see that other boys were not with the girls, admitted that he had been instrumental in effecting a reconciliation between Weyer and defendant's daughter, declared that he did not know of defendant's objections to Weyer, and promised not to interfere farther. A ladder, which had been placed by somebody at the window of the girls' room, was then removed, and defendant retired. He was up again at 4 o'clock a. m., only to find the young women gone. He immediately began search and after telephoning to neighboring towns and ascertaining that Weyer had left the livery stable with a team at about 2 o'clock in the morning, met plaintiff as he was returning with said team. In response to inquiry the plaintiff informed defendant that he had left Weyer and defendant's daughter at Nodaway. Defendant, with the town marshal, left at once for that place, but found they had not been there. He then telephoned to Villisca, and was advised that they were at one Himiller's a mile and one-half southeast of Villisca. He then drove there, and learned that they had left after getting breakfast. The search was continued by the party until noon, when the marshal sent for men and teams to assist. At about 4 o'clock in the afternoon Weyer and the daughter were discovered, and the latter returned to her home.

After the facts as recited had been detailed, the following question was propounded to the defendant: "Now,

1. PARENT AND CHILD: loss of services; injury to clothing; recovery of damages. doctor, I will ask you the condition your daughter was in when brought home, as to her clothes being soiled, and her being sick, and how long that sickness continued?" This was objected to

on the ground that it had not been made to appear that plaintiff caused or contributed to the injury of her clothing or the physical condition of the girl. The objection was sustained, whereupon counsel for defendant stated that he proposed to show that defendant's daughter was strong and healthy prior to this escapade, but on her return she was ill, weakened, and confined to her bed for a week under a physician's care, and had since suffered from the nervous shock; that her clothing was soiled and torn; and that he proposed to show the value of her services lost thereby, and the cost of medical attendance and of repairing her clothing. Conceding all this, the court held that such damages were not the proximate consequence of what plaintiff had done. In this ruling we cannot concur. The clothing furnished his minor daughter was the property of the defendant, and he was entitled to recover for any injury thereto which resulted directly from plaintiff's act. *Parmelee v. Smith*, 21 Ill. 620; *Dickinson v. Winchester*, 4 Cush. 114 (50 Am. Dec. 760). So, too, was defendant entitled to recover for any loss of services or for medical attendance occasioned directly by the acts of plaintiff. See 21 Am. & Eng. Enc. 1044 *et seq.*

This does not seem to be questioned, but it is urged that the sickness and injury to clothing did not result from plaintiff's act in taking the parties to Himiller's, but after they had reached there. This view ignores the evidence tending to show a conspiracy between plaintiff and Weyer in pursuance of which the latter attempted to elope with the daughter, and that what was done might have been found to have been done in pursuance of such conspiracy. True, the plaintiff and Weyer denied that any arrangement had been made prior to starting for Himiller's place, but this merely raised an issue to be determined by the jury. The facts that plaintiff, when in company with Weyer, handed the note to defendant's daughter, if he so did; that he and Weyer repeatedly signaled

2. CONSPIRACY: evidence; liability of conspirators.

to her at a late hour of the night under circumstances indicating a purpose to induce the girls to leave the house; that he accompanied Weyer and defendant's daughter to Himiller's, and then, to put defendant on the wrong track, deliberately deceived him — these were circumstances tending to establish the existence of a conspiracy between the young men to deprive the defendant of the custody of his daughter, and were sufficient to have sustained a verdict had the jury so found. If so, each was liable for all damages naturally flowing from any wrongful act of either in carrying out their joint enterprise. It cannot be said that it was contemplated that flight should terminate at Himiller's, but little more than a mile from her home. Pursuit was anticipated, else deception would not have been practiced to put defendant off track. Weyer and the girl had no other means of continuing their journey, after plaintiff left them at Himiller's, than on foot. That the parties to the conspiracy, if such there was, contemplated that the journey should be continued, the jury might well have found. They knew the conditions as to weather, roads, and fields, and that these were such that injury to clothing and health might result. At any rate, if such injuries were the natural consequence of what was done in executing the design of these young men, and resulted in damage to the defendant in the way of injury to his daughter's clothing and loss of her services and expense for medical attendance, he should have been allowed therefor on his counterclaim. The evidence was admissible. The plaintiff's conduct was most contemptible throughout, and he should not be permitted to escape responsibility for any damages directly consequent from the acts of either himself or Weyer if within the scope of and in carrying out their common purpose.

II. The court instructed the jury not to take into consideration the circumstances pleaded in mitigation in fixing the amount of damages to be allowed plaintiff. This was correct. The defendant admitted that he had deliberately

decided to whip plaintiff and prosecute Weyer. Provoca-
tion, to be admissible in mitigation of damages,
must be so recent and immediate as to induce
a presumption that the violence was committed
under the immediate influence of the passion thus wrong-
fully excited.   If the assault had been made after time for
reflection, and under circumstances leading to the presump-
tion that it was for revenge, he stands in the position of an
original trespasser, and conduct of the other party will not
serve as an extenuation.   The test is whether " the blood has
had time to cool."   *Ireland v. Elliott,* 5 Iowa, 478, *Thrall v.
Knapp,* 17 Iowa, 468 ; *Gronan v. Kukkuck,* 59 Iowa, 18.   In
the last two cases it seems to have been thought that a provo-
cation happening the day previous to the assault ought not to
be shown, for that sufficient time had intervened to allow the
passions to subside and reason to regain control of the mind.
Conceding the correctness of the rule as applied to the facts
of those decisions, it is doubtful whether any arbitrary limi-
tation of time should be adopted.   The test is not that of
time, but of casual relation, and provocation happening a
longer time previous may in exceptional circumstances be
shown.   See *Ward v. White,* 86 Va. 212 (9 S. E. 1021, 19
Am. St. Rep. 883).   In the instant case, however, what the
defendant did was after deliberation, and not in the heat
of passion.   He may have been aggravated with the con-
duct of the boy, but he did not whip him in the heat of pas-
sion.— *Reversed.*

3. ASSAULT: mit-
igation of
damages.