GEORGE E. FINN, Appellee, v. FRANK D. STODDARD, Appellant.

**DAMAGES:** Evidence—Mitigation—Assault and Battery. Matters in mitigation of the damages attending an assault are wholly inadmissible as a matter of law, when the circumstances of the assault show beyond question that the assailant had ample time for the cooling of his blood, and committed the assault from anger and a desire for revenge. Sec. 3593, Code, 1897.

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

THURSDAY, APRIL 5, 1917.

THE action is for damages, actual and exemplary, for assault and battery. There was a trial to a jury, and a verdict and judgment for plaintiff in the sum of $1,500. Defendant appeals.—*Affirmed.*

*C. W. Kepler* and *Voris & Haas,* for appellant.

*C. J. Cash* and *Barnes, Chamberlain & Randall,* for appellee.

DAMAGES : evidence : mitigation : assault and battery.

PRESTON, J.—There is really only one question in the case. Several errors are assigned, but these relate to the one question, and that is in regard to the alleged provocation to defendant, and whether the evidence offered in reference thereto

should have been admitted and received on the question of mitigation of damages.

The assault upon plaintiff occurred about noon. Defendant pleaded in mitigation of damages that, about 11 or 12 o'clock the night before, the plaintiff, without cause or excuse, at a church in the neighborhood, and in the presence and hearing of a large number of people there assembled, including defendant's young children, verbally abused and insulted defendant's wife, and accused her of being "down and out" in the neighborhood where they lived, meaning and intending to be understood as being without standing or character and without friends or associates, and that plaintiff did at the time shake his clenched fist at her, causing her great humiliation and shame; that defendant first learned of such conduct near midnight, and, while smarting under the treatment toward his wife, and while laboring under mental strain caused thereby, and while his passions were greatly aroused, and while under excitement, the next day met plaintiff and chastised him, but with no intent to inflict any serious or permanent injury. He says that, by reason of the premises, if plaintiff received any injuries at the hands of defendant, plaintiff was responsible therefor; and that, if plaintiff received any serious injury, the same was accidental and not the result of any chastisement by defendant. These facts are pleaded in mitigation of any damages claimed to have been sustained. The defendant offered, in different ways, to show by the defendant and his wife the details of the alleged conversation between plaintiff and defendant's wife the night before, and that she informed him of that fact, and its effect upon defendant. The plaintiff's objections to such testimony were upon the grounds, as we understand it, that such matters so offered to be shown were too remote, and that there was sufficient cooling time. Appellant's contention is that the transaction in regard to the fight and the alleged conversation the

night before were so connected as that the defendant was still laboring under the excitement thereof. They contend that the question of provocation and its effect upon the mind of defendant at the time of the assault were matters of fact to be determined by the jury under proper instructions, and that whether malice existed was a question for the jury. They cite on this proposition *Ireland v. Elliott,* 5 Iowa 478; *Shoemaker v. Jackson,* 128 Iowa 488; *State v. Thomas,* 169 Iowa 591; also *Maher v. People,* 10 Mich. 212, a homicide case; and *Lenfest v. Robbins,* (Me.) 63 Atl. 729, where it was held that, in an action for trespass to the person, the provocation, conduct and acts of the party which give character and color to the transaction and are clearly and really a part of it may be shown, though not transpiring at the precise moment of the assault. Other cases are cited by appellant to substantially the same effect. It may be remarked in passing that we do not find that defendant testified that he had no malice against plaintiff at the time of the assault, or that he was asked that question.

On the other hand, it is contended by appellee that the undisputed evidence clearly shows that the assault was the result of anger and revenge, and that it was premeditated. Of course, there is a time in some transactions of this kind when the court may say, as a matter of law, that the proferred evidence is too remote, and we think such is the fact in this case. It may be true, as contended by appellant, that, though the rule is, that the provocation, to be admissible in mitigation of damages, must be so immediate as to induce the presumption that the violence was committed under the immediate influence of the passions thus wrongfully excited, yet immediateness, as here meant, is tested by closeness, not of time, but of causal relation. On this point they cite the two Iowa cases of *Shoemaker v. Jackson,* supra, and *State v. Thomas,* supra, and cases from other jurisdictions.

. It is proper to take into consideration in each case all the facts and circumstances, in determining the question as to whether such evidence is or is not too remote. We shall refer to some of the circumstances in this case, but not the details. It is shown that the defendant was indicted for and pleaded guilty to the charge of assault with intent to inflict great bodily injury. Defendant's farm adjoined plaintiff's. The assault took place in the town of Jackson. A witness testifies that, in the forenoon of the day of the assault, he was helping plaintiff load hogs at plaintiff's farm, and saw defendant at his home while plaintiff was loading hogs; that defendant was looking down where plaintiff was loading. Soon after this, defendant started to the town of Jackson, between 9 and 10 o'clock. On the road he met witness Wink, and said to Wink that he (defendant) was going to Jackson and meet Finn. He asked Wink to go down and see a little fun. Defendant was about the store in Jackson for about half an hour before plaintiff came up; defendant bought some groceries, and said to the storekeeper that he would pay for them if he was able to when he got ready to go home. Thereafter, he went over to the scales where plaintiff was weighing his hogs. Defendant himself testifies, on cross-examination, that he saw plaintiff drive up, and that, when he went over to plaintiff, he told plaintiff that he (plaintiff) had insulted defendant's wife, and to pull off his coat. Defendant thereafter pulled off his own overcoat. It was cold weather. Defendant says further:

"When I told him to take off his coat, I meant for him to do it so that we could have it out there—have this trouble settled. I intended to tell him how he used my wife and make him take it back; I intended to give him a beating."

There is evidence that defendant came up to plaintiff from behind, or perhaps a little to the side. As to the assault, plaintiff testifies:

"I leaned forward to get the weight of the hogs, and I heard a rush and the words, 'You son-of-a-bitch, I am going to get you; I am going to lick you.' As I turned, I caught a heavy blow on the left temple from Stoddard. I backed up 15 feet and struck the wagon tongue, which nearly threw me to the ground. As I recovered, he clinched and threw me. As I went down with my weight, I felt my leg break. I gave a kick and rolled or turned him. He beat at my face, and as I turned him, he went under. He caught my thumb with his teeth. My broken leg began to pain me. He got his finger or thumb in my right eye. He tried for my eye several times and scratched and tore my eyes. While I was down, he struck me several hard blows, mostly on the side of the head, rendering me nearly unconscious; he held my head and my head was on the frozen ground while he was beating it."

Other witnesses gave similar testimony. The testimony of defendant as to the assault qualifies to some extent the testimony of plaintiff's witnesses. Two or three witnesses testified that, after the fight and after defendant had gone back to the store platform, they saw him dancing on the platform, and that he folded his arms and said he "could lick another just like him;" that after he danced, he picked up his coat and went away. There is testimony that after the fight, defendant said he had whipped him and was satisfied. Some of the witnesses testify that, after the fight, defendant was excited. Defendant claims that plaintiff struck at defendant first, but several witnesses deny this. Some of the circumstances before stated are not denied by the defendant. He does not deny the testimony of the witness Wink as to what was said on defendant's way to town, and perhaps some others. Defendant claims that plaintiff was trying to get what he calls a jaw hold on defendant at the time defendant had plaintiff's thumb in his mouth, but this is denied by plaintiff. Defendant testifies that he

did not close his teeth on plaintiff's thumb until plaintiff had his thumb in defendant's mouth the second time. But plaintiff claims in rebuttal that he was only trying to keep defendant from biting his thumb off. The testimony shows that defendant's mouth was torn some. The trial court permitted several witnesses to testify that, during the fight, or at about the time of it, either before or after, defendant stated to plaintiff that plaintiff had insulted defendant's wife, and that plaintiff denied it.

The testimony shows that plaintiff was seriously injured. The flesh on his thumb was torn and the nail torn through and bruised on the end of it; he was scratched about the eyes; the covering of the eyeball was red and seemed to be injured; there were scratches on the face where the skin was torn off the outer surface; his leg was broken in two places—one about three inches above the other; one of the doctors testified that it looked like a Pott's fracture; another witness testifies that the ankle was dislocated and the ligaments torn. The evidence tends to show that plaintiff's injuries are permanent. Others say that it will be some years, at least. He was laid up for several weeks. The doctors say that the fractured limb was made more serious because of the beating.

From the circumstances enumerated and others in the record, it is quite clear to our minds, and we think the jury could not have found otherwise, that the assault was premeditated and the result of anger and revenge. Under the circumstances here shown, we think the details of the conversation between defendant and his wife, some twelve hours before the assault, were not so connected with the assault as to be substantially a part of it, and that it was too remote.

In the case of *State v. Thomas*, supra, it was said the reasonableness or adequacy of the provocation must depend on the facts of the particular case, and that the circum-

stances of each case necessarily must determine the admissibility of the evidence, as well as its bearing on the different issues presented. In the same case, it was said, in substance, that ordinarily such evidence should be submitted to the jury under proper instructions, but that the question is one of reasonable time and dependent on all of the facts of the case; that the time may be so long as to exclude all doubt on the subject and exact exclusion of the evidence, in so far as offered in extenuation.

In the instant case, as before stated, defendant admits he went over to where plaintiff was, and that he intended to give him a beating. In the *Shoemaker* case, supra, the defendant admitted that he had deliberately decided to whip plaintiff, and the court said:

"Provocation, to be admissible in mitigation of damages, must be so recent and immediate as to induce a presumption that the violence was committed under the immediate influence of the passion thus wrongfully excited. If the assault had been made after time for reflection, and under circumstances leading to the presumption that it was for revenge, he stands in the position of an original trespasser, and conduct of the other party will not serve as an extenuation. The test is whether 'the blood has had time to cool.' *Ireland v. Elliott*, 5 Iowa 478; *Thrall v. Knapp*, 17 Iowa 468; *Gronan v. Kukkuck*, 59 Iowa 18. In the last two cases, it seems to have been thought that a provocation happening the day previous to the assault ought not to be shown, for that sufficient time had intervened to allow the passions to subside and reason to regain control of the mind. Conceding the correctness of the rule as applied to the facts of these decisions, it is doubtful whether any arbitrary limitation of time should be adopted. The test is not that of time, but of causal relation, and provocation happening a longer time previous may in exceptional cases be shown. * * * In the instant case, however, what the defendant

did was after deliberation, and not in the heat of passion. He may have been aggravated with the conduct of the boy, but he did not whip him in the heat of passion."

Such is the situation, we think, in the instant case. In *Thrall v. Knapp*, 17 Iowa 468, defendant sought to show slanderous statements concerning defendant's daughters the week before the assault, which were communicated to defendant three hours before the assault, and also the day before, and the evidence was excluded. It seems to be the rule that, if the provocation is so connected as to be a part of the transaction, it is considered as contemporaneous. See, also, on this branch of the case, *Avery v. Ray*, 1 Mass. 11, 12.

Referring again to the case of *Thrall v. Knapp*, a controversy arose as to a political meeting, and the defendant offered to prove in mitigation of damages that plaintiff knew the declarations in relation to the numbers who attended the meetings to be false, and the court there said:

"The court allowed all that the parties said about it at the time of the assault to be shown to the jury. It was proved to the jury that the defendant, at the time of the assault, claimed that plaintiff's statements were false. If the court had allowed the defendant to give evidence of the numbers who attended the meeting, and the plaintiff's knowledge thereof, the plaintiff would certainly be entitled to produce counter evidence on the same subject, 'and thus,' in the language of Chief Justice Spencer, in *Lee v. Wolsey*, supra, in which this precise point arose, 'an inquiry wholly different from the one on record would be gone into, diverting and distracting the attention of the jury.'"

So it was in the instant case. As before stated, the court allowed all the circumstances surrounding the assault to be shown, including the fact that defendant claimed that plaintiff insulted defendant's wife, and that plaintiff denied the same.

Without further discussion of the authorities, it is our conclusion that the ruling of the trial court in excluding the offered testimony, and in withdrawing the question of mitigation based thereon, was correct. It follows that the judgment of the district court must be, and it is,—*Affirmed.*

GAYNOR, C. J., LADD and EVANS, JJ., concur.