BENNETT v. FLESER.

EVIDENCE—MITIGATION OF DAMAGES—UNJUSTIFIABLE ASSAULT.

In an action for damages for an admittedly unjustifiable assault upon a married woman in the nighttime, presumably because of offenses against the morals of the community, the rejection of testimony as to the intent of defendants in going to plaintiff's home on the night in question, offered by them in mitigation of damages, is sustained, and a substantial judgment in favor of plaintiff is affirmed by a divided court.

Error to Kent; Dunham (Major L.), J. Submitted June 7, 1923. (Docket No. 75.) Decided December 19, 1923.

Case by Nina D. Bennett against Henry Fleser and others for personal injuries. Judgment for plaintiff. Defendants bring error. Affirmed by an equally divided court.

*Clare E. Hoffman,* for appellants.
*Shelby B. Schurtz,* for appellee.

On right to recover for mental sufferings caused by assault where no bodily injury was inflicted, see note in 25 L. R. A. (N. S.) 976.

On evidence of provocation to mitigate damages in civil action for assault, see notes in 1 L. R. A. (N. S.) 137; 11 L. R. A. (N. S.) 670.

SHARPE, J.    Plaintiff and her husband and their young son lived at Burnips Corners in Allegan county in June, 1921.    On the night of the 3d, while the husband was in Grand Rapids, a number of persons, alleged to be the defendants, came to her home, broke a window of her sleeping room, forcibly pulled her through the opening, stood her up against the wall and threw eggs at her, some of which struck her and others the wall of the building.    They then insisted on her washing the discoloration on the building and dressing herself preparatory to taking her to Grand Rapids, but finally concluded to and did leave her at home.    This action is brought by her to recover damages for the unwarranted assault and the "pain, humiliation, annoyance, suffering and mental distress" caused thereby.    At the close of plaintiff's proofs, a verdict was directed in favor of the defendants John Brower, Fred Hildebrand and John Lippert, and at the close of the proofs in favor of Margaret Hildebrand.    She had verdict and judgment for $2,000. The remaining defendants review the judgment entered by writ of error.

1. It is strenuously insisted that there was no evidence to support the verdict against John Hildebrand and May Hildebrand and that a verdict should have been directed in their favor as requested.    It appeared that a number of those present had placed handkerchiefs over their faces to conceal their identity. Plaintiff, on being asked to state whom "among the mob" she recognized, named a number of persons, including John Hildebrand.    William Brenner, who arrived on the scene about the time plaintiff was compelled to wash the wall of the building, testified that John Hildebrand was there.    Searle Bennett, plaintiff's 12-year-old son, who was with her in the house, testified that he recognized John Hildebrand by his voice and that he had a mask on.    Plaintiff testified

that May Hildebrand was present and Searle testified that she was among those who pulled his mother out of the window.    There was proof to the contrary as to both of these defendants, but we think an issue of fact was presented which it was the duty of the court to submit to the jury.    Error is assigned on the refusal to instruct as to these defendants as preferred in the 8th request to charge.    While this request might well have been given, we are of the opinion that, in effect, it was fairly covered by the charge.    In view of the conclusion we have reached that a new trial should be had, it is unnecessary to consider the assignment that the verdict as to these defendants was against the clear weight of the evidence.

2. Error is assigned upon the restriction placed upon the cross-examination of the plaintiff.    This is perhaps best shown by the following from the record:

"*Mr. Hoffman:* May it please the court, in this case, as I understand the declaration, the plaintiff claims damages for humiliation and suffering caused by this assault and we are asking the right to give evidence tending to show that she was not a refined person or a person of refined sensibility, and that prior to the time in question she had been guilty of making lewd and indecent remarks in the presence of and to the girl Lillian and the boy Joe Goodman, whose adoptive mother is a defendant, and that she had, before this time, committed various immoral acts with one Henry Fleser, who is one of the defendants, and with one Goodman, a young man of that community; and that these facts had come to the knowledge of the defendants, Katie Fleser and Jacob Hildebrand and his wife, and that whatever they did on this night in question was done because of their personal knowledge of these acts and because of rumors to the same effect, and that while we do not offer it in justification, we do offer it in mitigation of damages.

"*The Court:* It will not be received, not competent.

"*Mr. Hoffman:* I also claim the right, as part of the cross-examination of this witness, as bearing upon her

credibility, to ask her about these various transactions to which I have referred.

"*The Court:* Some part of those things might, perhaps, be competent as bearing upon the witness's credibility, but there is no justification, could not be any justification for any of the acts that the plaintiff claims were perpetrated that night, if they were perpetrated.

"*Mr. Hoffman:* Oh, I agree, your honor, as to the understanding of the rule. I do not wish to keep asking questions apparently in defiance of the court's ruling. I trust your honor understands that.

"*Mr. Schurtz:* It strikes me, your honor, that he is trying to impeach the witness on entirely collateral matters having nothing to do with the case, besides being immaterial.

"*Mr. Hoffman:* I am willing to accept the ruling when I get it.

"*The Court:* I do not think I will take any of that testimony for any of those purposes. It certainly could not be used for justification. People are not justified in assaulting others because they think somebody else is not living just the kind of a life they should. I think I will exclude the whole testimony for the purposes for which it is offered."

In his instructions to the jury the court said:

"Now, I might call your attention to this: It is also the claim of the defendants, although they are not justified in it, because, as I have said, there can be no justification, if these people went down there to see something about a young lady, now, was that intentional, innocent or not? How did they go down there? Were they masked? Did the women go down there with men's clothing on? How did they go down there? You must find from the evidence some of these people talked before they went down there. What is the fact, about their going down there? Did they go down there masked? Did these women that went down there go down there with men's clothing on, or with garments on that resemble men's clothing? What did they do when they got down there? Consider all these things as bearing upon the question of

whether these people went down there in good faith to make inquiry about any one."

This was followed by instruction that if the jury found that—

"the attack upon plaintiff was as claimed by her, malicious and wilful, and made under such circumstances as to cause her suffering and injury to her feelings and that she has suffered by reason of any of her feelings being outraged, you may, and should include in the sum awarded to her, the damages she sustained by way of compensation and by reason of the malicious attacks upon her, if you find they were malicious.

"The damages she is entitled to, if you find she is entitled to any, is such a sum as will fairly and fully compensate her for all injuries she has sustained, including damages for any physical injury and for all subsequent pain and suffering, if any; damages for wounded feelings, mental suffering, humiliation, degradation and disgrace, if any, that resulted to her by reason of the attack upon her there at her home that night."

There was no notice of justification and none could be proven. The assault was unjustified. The defendants had no right to seek to redress a real or fancied grievance by the means employed. Their conduct was unlawful, and plaintiff was entitled to such damages as would compensate her for the injuries she sustained. We find no error in the court's instructions in this respect. The court, however, called attention to the manner in which the defendants disguised themselves and told the jury to consider that fact and what they did while there—

"as bearing upon the question of whether these people went down there in good faith to make inquiry about any one."

Plaintiff was asked, "And the day before didn't Mrs. Katie Fleser come to your store to see you?" An objection of plaintiff's counsel was sustained. If the

good faith of the defendants in going to plaintiff's home. was in issue, it was clearly error not to permit defendants' counsel to show, on cross-examination of plaintiff, facts bearing upon it.

Had the plaintiff but related what was said and done by the defendants at her home and described the physical injuries she received and given expression to the mental suffering, humiliation and disgrace felt by her, her damages would have been restricted to such as were actual and the amount to a sum which would fairly compensate her therefor, and there could be no mitigation thereof.     No question of the "good faith" of the defendants would be presented.     The examination of plaintiff and her witnesses by her own counsel disclosed the fact that the defendants had a motive for what they were doing; that they were seeking a young girl, Lillian, the adopted daughter of the defendant Katie Fleser.     The plaintiff, in effect, denied that she was harboring this girl and said that she was in Grand Rapids.     From her testimony and that of her witnesses, the inference might fairly be drawn that the assault was actuated by vindictive feelings towards her by the defendants and was "malicious and wilful."

While the declaration did not so allege, it was said in *Wise* v. *Daniel*, 221 Mich. 229, 234:

"The accompanying circumstances aggravating the injury by reason of the wanton and malicious conduct of the defendant need not be specially pleaded for they are not substantive elements of damages, but only serve in the capacity of characterizing the acts complained of and as an aid in measuring compensation to be awarded."

Feelings of shame, mortification and disgrace were but the natural results of the treatment of plaintiff, and she was entitled to recover actual damages therefor.     *Ross* v. *Leggett*, 61 Mich. 445, 453 (1 Am. St. Rep. 608).     As the assault was not justified, the

motive behind it was immaterial in determining such damages and there could be no mitigation thereof. But when the jury were instructed that the good faith of the defendants was involved, that they might consider the fact that defendants went to her home masked, and, if they found that the attack "was as claimed by her, malicious and wilful," they might consider this fact in their award of damages, they were in effect told that they might, as was said in *Wise* v. *Daniel, supra,* "enlarge the compensatory allowance" by reason thereof. If this issue was to be passed upon by the jury, the defendants were entitled to meet it by proof in the way of denial and also by proof in mitigation of such damages. The applicable rules are well stated in *Scripps* v. *Reilly,* 38 Mich. 10, 23. It is said:

"5. Where, however, the elements exist in a case, entitling a party to recover damages for injured feelings, the amount to be allowed for shame, mental anxiety, insulted honor, and suffering and indignation consequent on the wrong, may be increased or aggravated by the vindictive feelings or the degree of malice, recklessness, gross carelessness or negligence of the defendant, as the injury is much more serious where these elements, or either of them, are shown to have existed.

"6. This increase of damages dependent upon the conduct of the defendant must be considered in this State as actual damages, although usually spoken of as exemplary, vindictive or punitory, and the amount thereof to be recovered, where recoverable at all, as they are incapable of ascertainment by any other known rule, must rest in the fair and deliberate judgment and discretion of the jury acting upon their own sense of justice in view of all the circumstances, both mitigating and aggravating, appearing in the case, and which can fairly be said to give color to or characterize the act, aided, however, by such instructions from the court as will tend to prevent the allowance of damages merely fanciful, or so remote as not fairly resulting from the injury."

The personal indignities of which plaintiff complains were such as would wound the feelings and cause humiliation and disgrace to any female, and she is entitled to compensatory damages therefor. Where, however, it is sought to increase such damages by reason of the vindictive feelings and the malice and wanton conduct of the assailants, the defendants should be permitted to show any facts fairly tending to mitigate such damages. A woman of a refined, sensitive nature would suffer much more by reason of such indignities than one who by her manner of life has rendered herself insensible to the good opinion of her neighbors or those who know her. What may be felt to be a great indignity by one person may not be so regarded by another. If the conduct of the plaintiff had been such as would render her impervious to the good opinion of others, it cannot be said that she would feel as great humiliation or shame on account of the outrage as she would if she had led a blameless life. And if not, the jury should consider this fact in determining to what extent, if any, the damages naturally resulting from the unjustifiable assault should be increased by reason of the wilful and malicious conduct of the assailants.

Much latitude should be allowed in the cross-examination of witnesses, particularly a party to the action, on all matters affecting their credibility. No more definite rule can be laid down. While witnesses cannot be impeached as to answers given relating to collateral matters, they may be interrogated as to any facts which will aid the jury in determining the weight to be given to their testimony. The trial court can usually be relied on to exercise a wise discretion in such matters. We are persuaded that the ruling of the court as to the admission of proof, in view of the charge as given, constituted error so prejudicial as to necessitate a reversal of the judgment.

The judgment should be reversed and a new trial ordered, with costs to appellants.

WIEST, C. J., and McDONALD and CLARK, JJ., concurred with SHARPE, J.

FELLOWS, J.   I am unable to bring myself into accord with the opinion written by Mr. Justice SHARPE in this case.   I do not think the proof proffered by defendants for the so-called purpose of mitigating damages was rendered admissible by any excerpts from the charge of the court.   Permitting the jury to consider the good faith of defendants was more favorable to them than they were entitled to. There could be no good faith in this unjustified assault on this defenseless woman.   The charge as a whole very carefully limited the plaintiff's recovery to compensatory damages only.   While not precisely in point, I think that that line of cases which excludes evidence of provocation from causes existing long enough before the assault to permit the blood to cool, and the other line of cases which excludes evidence of a party's reputation in a civil suit where such party's reputation is not directly in issue, are by analogy applicable.   In *Millard* v. *Truax*, 84 Mich. 517 (22 Am. St. Rep. 705), it was said by this court:

"A defendant cannot give in evidence in mitigation of damages for an assault the acts and declarations of the plaintiff at a different time, or any antecedent facts which are not fairly to be considered as part of one and the same transaction."

And in *Fahey* v. *Crotty*, 63 Mich. 383 (6 Am. St. Rep. 305), it was also said by this court:

"The general rule is that it is not competent to give evidence of the general character of the parties to a cause, nor of particular facts not in issue, with a view of raising a presumption to a party, or unfavorable to his adversary.   Best, Ev. § 257; 1 Phil. Ev. p. 757 *et seq.*

"It is only where the very nature of the proceedings is such as to put the character of the parties in issue that a different rule prevails.    This is not the case in an action for an assault and battery.    *    *    *

"In civil actions, with the exception of those cases where, by the pleadings, the character of the party is put in issue, the weight of authority is against the admissibility of such testimony to rebut imputations of misconduct or fraud."

A leading case which had under consideration the question of whether in an action for assault and battery provocation which did not amount to justification could be considered by the jury in mitigation of compensatory damages is *Goldsmith's Adm'r* v. *Joy*, 61 Vt. 488 (17 Atl. 1010, 4 L. R. A. 500, 15 Am. St. Rep. 923).    It was there said:

"If provocative words may mitigate, it follows that they may reduce the damages to a mere nominal sum and thus practically justify an assault and battery. But why under this rule may they not fully justify? If in one case, the provocation is so great that the jury may award only nominal damages, why, in another, in which the provocation is far greater, should they not be permitted to acquit the defendant and thus overturn the well-settled rule of law, that words cannot justify an assault.    On the other hand if words cannot justify they should not mitigate.    A defendant should not be heard to say that the plaintiff was first in the wrong by abusing him with insulting words and therefore, though he struck and injured the plaintiff, he was only partly in the wrong and should pay only part of the actual damages."

In *Shoemaker* v. *Jackson*, 128 Iowa, 488 (104 N. W. 503, 1 L. R. A. [N. S.] 137), it was held that the jury might not consider in mitigation of damages in an action for assault and battery the fact that plaintiff had assisted in the elopement of defendant's minor daughter.    In that case the blood had had time to cool and it was said:

"Provocation, to be admissible in mitigation of damages, must be so recent and immediate, as to induce a presumption that the violence was committed under the immediate influence of the passion thus wrongfully excited. If the assault has been made after time for reflection, and under circumstances leading to the presumption that it was for revenge, he stands in the position of an original trespasser, and conduct of the other party will not serve as an extenuation."

And in *Lovelace* v. *Miller*, 150 Ala. 422 (43 South. 734, 11 L. R. A. [N. S.] 670), it was held that evidence of an insult to defendant's daughter was not admissible in mitigation of damages. In *Mahoning Valley R. Co.* v. *De Pascale*, 70 Ohio St. 179 (71 N. E. 633, 65 L. R. A. 860), it was said by Mr. Justice Crew, speaking for the court:

"The theory of the instruction asked by counsel for the railway company is, that in an action for personal tort, words of provocation spoken by the plaintiff should be taken and considered by the jury in mitigation of actual or compensatory damages, as well as in mitigation of exemplary or punitive damages. Whether or not they may properly be so taken and considered and such effect be given them, is the question here presented by this request to charge. On this proposition the authorities are not in entire harmony. While in perfect accord upon the proposition that mere oral provocation or abusive language, is not a defense and will not of itself justify the offended party in assaulting, or in inflicting injury upon the person so offending, there is some conflict and contradiction in the decisions of the courts of last resort on the question whether mere provocative language can have the effect to mitigate or reduce compensatory damages, or whether it is to be limited in its office and effect to the mitigation and reduction of punitive damages, in those cases where punitive damages may be properly awarded. We think, that the better rule and the clear weight of authority, is in favor of the proposition that actual or compensatory damages are not in any case, subject to mitigation, by proof of mere provocation. The malice of the

defendant can never have the effect to increase the damages which a plaintiff may recover for actual pecuniary loss or injury, but such damages are wholly unaffected by either the presence or absence of malice on the part of the defendant. How then, or upon what principle can it reasonably be held that provocation on the part of the plaintiff, which does not in law amount to a justification, may mitigate such damages. To so hold would, in effect, be to allow such provocation to be used as a defense, and to thus permit by indirection that which could not be done directly."

In *Hare* v. *Marsh*, 61 Wis. 435 (21 N. W. 267, 50 Am. Rep. 141), it was said:

"By these instructions the jury were, in effect, told that in determining the amount of actual or compensatory damages they might take into consideration the means of the defendant, and his public position at the time as postmaster and president of the village. What legitimate bearing the wealth or poverty of the defendant, his office, public position, or private station had upon the damages which the plaintiff had actually sustained, we are unable to perceive. The plaintiff's actual damages were what they were, and could neither be increased nor diminished by any conceivable position or circumstances of the defendant. The instructions given were in direct conflict with the whole current of authority in this State."

The general rule is thus announced in 5 C. J. p. 680:

"As a general rule, in actions for an assault and battery the character of neither party is in issue, and cannot be the subject of the attack, unless it is first attacked or supported by the adversary, or placed in issue by the nature of the proceeding itself."

To have admitted the proffered proof would, under the guise of mitigating the damages, have injected into the case numerous collateral issues, which the plaintiff could not be prepared or expected to meet. Of a somewhat similar situation it was said by Justice

Campbell, speaking for the court in *Proctor* v. *Houghtaling*, 37 Mich. 41:

"It would be very dangerous to allow issues to be made on the trial concerning specific acts of the plaintiff, or specific rumors, or charges against her not going to the direct issue in the cause. She could have no means of defense against malicious fabrications which are by no means unusual in such cases, and the reputation of the purest persons could easily be ruined or damaged by allowing free scope of such testimony. As has often been remarked, the general reputation of any one may be expected to be within the knowledge of attainable witnesses at all times, but it would be impossible to be prepared for all the particular slanders which perjured and malicious witnesses might invent. A large mass of such rubbish has been introduced into this case, without any respectable authority to maintain its reception. The practice is not to be commended."

One does not have to read between the lines in this case to reach the conclusion that plaintiff had in some way offended the sensitiveness of society at Burnips Corners. A mob was organized in the absence of her husband, and the self-appointed conservators of the morals of the community took the law in their own hands and proceeded to administer it in accordance with the ethics of the Stone Age. When called to account they seek, by able and adroit counsel who understand and frankly state that the assault was without justification, to besmirch her character and under the pretext of mitigating her actual damages to try collateral issues which she can not be expected to meet and which tend, if they tend to anything, to extenuate and partially justify an unjustifiable assault. It is our proud boast that all are equal before the law. If we deviate from this we must adopt one measure of damages for the attendant of pink teas and another for the scrub woman; one for the society women and another for the magdalens. I can not

acquiesce in such a holding.    I think the trial judge correctly rejected the proffered proof although it bore the label of "mitigation of damages."

The cross-examination of plaintiff which assailed her chastity was somewhat restricted by the trial judge.    But this was within his sound discretion. *People* v. *Cutler*, 197 Mich. 6, where the authorities are fully reviewed by Mr. Justice BIRD.    I do not think there was an abuse of discretion in the instant case.    I think the judgment should be affirmed.

BIRD, MOORE, and STEERE, JJ., concurred with FELLOWS, J.