## MONTGOMERY ET AL v. CRUM.

[No. 25,569.   Filed February 22, 1928.]

1. TRIAL.—*Jury should be fairly and fully informed as to issues to be tried.*—The jury should be fairly and fully informed respecting the issues of the case it is called on to try, and this can be done only by instructions (§571 Burns 1926).   p. 669.

2. TRIAL.—*Reading pleadings to jury not generally error.*—Generally speaking, it is not error for the court, in the course of its instructions, to read to the jury the pleadings tendering the issues to be tried. p. 669.

3. PLEADING.—A supplemental complaint and the original complaint should be considered as the complaint.   p. 670.

4. PLEADING.—*Supplemental complaint held proper.*—In an action for damages because of the wrongful acts of the defendants in abducting and concealing plaintiff's child, a supplemental complaint, alleging the continuation of wrongful acts of the same general character as those charged in the original complaint since the filing thereof, was proper, as it is the policy of·the law to grant relief as far as possible for all wrongs growing out the same transaction.   p. 670.

5. CONSPIRACY.—*Conspirators liable for injury to another resulting from commission of felony as the result of the conspiracy.*—The mere formation of a conspiracy to do an unlawful act will not furnish grounds for a civil action, but where a felony is accomplished as the result of the conspiracy, to the injury of another, the conspirators are liable for compensatory damages for the injuries inflicted, but not for exemplary damages.   p. 671.

6. CONSPIRACY.—*Acts of conspirators in furtherance of conspiracy to abduct and conceal child of divorced parents admissible although it was temporarily in their custody.*—In an action for damages because of the wrongful acts of the defendants in abducting and concealing plaintiff's child, whose custody had been awarded her in a divorce action between the parents evidence was admissible as to the acts of the grandparents of the child in furtherance of the conspiracy between them and the child's father to abduct and secrete the child, although it was then in their temporary custody pursuant to an order of the divorce court.   p. 672.

7. CONSPIRACY.—Direct evidence of a conspiracy can seldom be obtained, and, for that reason, the conspiracy may be shown by isolated and independent facts.   p. 673.

8. CONSPIRACY.—*Court has wide discretion in admission of evidence to establish conspiracy.*—In an action for damages where the complaint charges a conspiracy to do certain wrongful acts, to the injury of the plaintiff, the field of inquiry is broadened to allow the trial court a wide discretion in the admission of evidence showing the relation the parties to the conspiracy bear to each other, their motive for its formation

or their interest in the success of the act to be accomplished   p. 673.

9.   CONSPIRACY.—*Admissibility of defendants' acts and conduct before the alleged overt acts of the conspirators.*—In an action for damages alleged to have resulted from a conspiracy between plaintiff's former husband and other members of his family to abduct and conceal plaintiff's child, whose custody had been awarded her in a divorce action between the parents, evidence was admissible as to the manner, acts and conduct of the alleged conspirators prior to the divorce action, as tending to show a disposition and concurrence of sentiment in the common purpose thereafter accomplished, notwithstanding its remoteness, as that would only affect its weight and not necessarily its admissibility.   p. 674.

10. . LIMITATION OF ACTIONS.—The accrual of a cause of action for injuries to the person depends upon the uniting of at least two elements—injury and damages.   p. 678.

11.   LIMITATION OF ACTIONS.—*Accrual of cause of action for injuries to the person extending over a period of years.*—Where the wrongful acts of defendants, for which an action for injuries to the person has been brought, continued over a period of years, the accrual of the cause of action within the meaning of the statute of limitations (§302 Burns 1926) depends on whether such acts formed an unbroken chain from the time they began and were of such continuity as to constitute one wrong which was the proximate cause of the alleged personal injuries and damages suffered by the plaintiff, and this question is one of fact for the jury.   p. 678.

12.   LIMITATION OF ACTIONS.—*When statute begins to run for injuries to the person.*—The statute of limitations will not begin to run as a shield against the consequences of wrongful acts until the wrong-doer thereby accomplishes an injury to another for which the law allows indemnity in the form of damages, that is to say, damages susceptible of ascertainment, for not until then would the cause of action accrue to invoke the statute.   p. 678. ·

13.   LIMITATION OF ACTIONS.—*Running of statute as against a continuous wrong.*—Where the action is for damages resulting from the various consequences of one continuous wrong, the statute of limitations will not begin to run until there is a cessation of the overt acts constituting the wrong.   p. 679.

14.   CONSPIRACY.—*Proof of conspiracy renders each conspirator liable for damages resulting from wrongful acts of the others.*—Proof of a conspiracy between certain persons to commit a wrongful act to the injury of another enlarges the group of persons each of whom is responsible for the acts of the others in continuing the wrong and renders each of them liable for the damages resulting from the acts of the others.   p. 679.

15.   LIMITATION OF ACTIONS.—*Recovery for overt acts of conspirators beyond period of limitation not allowed.*—Where all the overt acts of

conspirators are without the period of limitations, the mere fact that such acts were done in furtherance of a conspiracy would not extend the statute of limitations so as to preserve a right of action otherwise barred. p. 679.

16. CONSPIRACY.—*Evidence held sufficient to authorize inference of conspiracy to estrange child from its mother.*—In an action for damages alleged to have resulted from a conspiracy between plaintiff's former husband and other members of his family to abduct and conceal plaintiff's child, evidence that its fathers relatives, who had taken it to another state and there kept it concealed from the plaintiff for many years, never talked to the child about its mother was sufficient to authorize an inference of conspiracy to estrange or alienate the child's affections, especially where, at the time of the trial, the child manifested no affection for the mother, but joined with the defendants in defending the action. p. 681.

17. PARENT AND CHILD.—*Damages that may be recovered for abduction of child.*—Under modern authorities, an action for damages for the abduction of a child may be maintained, and damages may be recovered, not only for the loss of services and money necessarily spent in pursuit, but for the unlawful deprivation of the custody, possession and companionship of the child, as also for the outrage, insult offered, and injury the parent, or one standing in *loco parentis*, may sustain from such wrongful invasion of his rights, but this does not include loss of the child's affections, except in so far as it may have caused physical or mental suffering on the part of the plaintiff. p. 683.

18. DAMAGES.—*Physical or mental suffering resulting from wrongful and intentional act considered in determining damages for such wrong.*—Where an act has been wrongfully and intentionally done which gives a right of action for damages, any physical or mental suffering which may have been thereby caused can be taken into account in determining the amount of damages to be allowed because of such wrong. p. 683.

19. JUDGMENT.—*Judgment of conviction in criminal prosecution not generally admissible in civil action for damages for the same act.*—As a general rule, a judgment of conviction in a criminal prosecution cannot be given in evidence in a civil action, especially where the action is for damages for the offense of which the party stands convicted, there being so great dissimilarity between civil and criminal actions in the parties, issues, procedure, and rules of evidence. p. 685.

20. PARENT AND CHILD.—*Certified copy of record of conviction for child stealing not admissible in action for damages for abduction of same child.*—In an action by the mother of a child for damages for its abduction by the father and other members of his family, a certified copy of the record showing the conviction of the father for stealing such child several years before and his sentence to serve a term of several years in the State Reformatory, was improperly admitted in evidence, as it was foreign to the issues. p. 685.

From Vanderburgh Probate Court; *James F. Cutler,* Special Judge.

Action by Ethel T. (Montgomery) Crum against John E. Montgomery and others. From a judgment for plaintiff, the defendants appealed to the Appellate Court. (Transferred to the Supreme Court under §1357, cl. 2, Burns 1926). *Reversed.*

*William Espenschied, William C. Welborn, Louis L. Roberts, Lucius C. Embree* and *Morton C. Embree,* for appellants.

*Sanford Trippet, W. D. Robinson* and *William E. Stilwell,* for appellee.

MYERS, J.—On August 29, 1921, appellee commenced this action in the Posey Circuit Court against her former husband, T. Wilbur Montgomery, his father and mother, John E. Montgomery and Paulina Montgomery, and his brother and sister, Chester Montgomery and Estella Montgomery.

On September 17, 1923, a supplemental complaint was filed, and a motion to strike it out was overruled. It and the original complaint were treated as the complaint on which the trial was had in the court below, upon a change of venue, resulting in a verdict and judgment for $25,000 in favor of appellee against all of the defendants. From that judgment, the defendants, except T. Wilbur Montgomery, appealed, each separately assigning and relying on the single alleged error of the court in overruling his separate motion comprising many alleged causes for a new trial.

While there is no attack on the complaint, yet a brief synopsis of it may serve to a better understanding of the questions we are called upon to determine.

The complaint, consisting of ten typewritten pages of the record, in substance, states that T. Wilbur Montgomery, who made default in the court below, is the

father, and appellee is the mother, of Mary Eloise Montgomery, who was born August 30, 1906. On May 3, 1912, by a decree of the Posey Circuit Court, appellee was granted a divorce from T. Wilbur Montgomery on the grounds of adultery, cruel and inhuman treatment, and had not lived with him since then; that by such decree appellee was given the custody of the daughter, Mary Eloise, with the proviso that if the grandparents, father and mother of T. Wilbur, so desired, they were to have the care and custody of the child during July and August of 1912, and during June, July and August of each succeeding year; that, during the months of July and August, 1912, the grandparents, at their home in Posey county, upon their request, had the care and custody of Mary Eloise until the latter part of August, when T. Wilbur Montgomery, pursuant to a conspiracy theretofore by him and these appellants formed, and by then and there unlawfully and feloniously confederating together, and, with the connivance and assistance of appellants, T. Wilbur, without the consent of appellee, against the will of the child and in defiance of the court's decree, wilfully, unlawfully and forcibly took and carried the child from the home of his parents and secretly out of the jurisdiction of the Posey Circuit Court and out of the State of Indiana, and, under a false and assumed name, and without the consent of appellee, kept and detained the child in hiding and concealment from appellee in various towns and cities in the State of Florida, also in Cuba, the Isle of Pines, and Mexico, continuously from August, 1912, until June, 1921, when she was returned to the home of appellants in Posey county; that continuously for six years following the abduction of the child in 1912, appellee made diligent and faithful effort, at great cost and expense, to locate the child by offering $500 reward for her return, and by employing lawyers, police officers and detectives;

that in 1912, Wilbur was, by indictment returned in the
Posey Circuit Court, charged with child stealing, ar-
rested in the State of Florida, extradited, and on March
13, 1913, was tried, convicted by a jury and sentenced
to pay a fine and to be imprisoned in the Indiana
Reformatory for a period of not less than two years nor
more than fourteen years; that in 1915, while in prison
as a prisoner, by the consent of the prison authorities
and the Governor of this state, he was permitted to re-
turn temporarily to the home of his parents for the pur-
pose of attending the funeral of his grandfather; that,
while he was so at home under the escort of a prison
guard, he made his escape, and thereafter was a fugitive
from justice until in December, 1917; that, while Wilbur
was so confined in prison, these appellants maliciously,
wrongfully and unlawfully continued to keep and detain
Mary Eloise in hiding and concealment in some foreign
state or country in places unknown to this plaintiff.
Thus and by such misconduct on the part of defendants,
plaintiff never had the care, custody, companionship or
services of the child from July, 1912, to July, 1921, when,
by virtue of a *habeas corpus* proceeding prosecuted in
the Gibson Circuit Court, actively defended by all of
the defendants except Wilbur and Chester, she recovered
possession of the child, but, notwithstanding the court's
order giving the possession of the child to appellee, the
defendants Estella and Chester jointly, severally, wil-
fully, maliciously and unlawfully continued to detain,
withhold, oppose, and, by advice, unduly influence the
child against going with appellee, and actually resisted
appellee's possession of her until, by appellee's per-
suasion, assisted by police officers, friends and bystand-
ers, to her great humiliation, mental and physical dis-
tress and suffering, she gained possession of the child,
who accompanied her to Indianapolis; that thereafter,
as shown by the supplemental complaint, defendants con-

tinued the conspiracy and wrongful conduct by means of letters, at times using a secret code, either directly to the child or through friends or relatives of defendants, and, in the fall of 1921, without any cause for so doing, they unsuccessfully applied to the Juvenile Court in Indianapolis for an order for the delivery of the child to them, thus further alienating the affections and estranging the child against its mother, and to further annoy, humiliate and thereby deprive her of the custody, control, companionship and services of the child; that on July 3, 1923, defendants spirited the child away, and unlawfully took her from her home in Indianapolis to the defendants Estella Montgomery and Wilbur Montgomery in the State of Florida, where they have ever since wrongfully and unlawfully kept and controlled her, to the great discomfort, anguish of heart, distress of body and mind of plaintiff.

Returning to the original complaint, it appears that in December, 1917, Wilbur, then in Cuba and a fugitive from justice, returned to the United States, and in January, 1918, to the then Governor of this state, from whom he sought a pardon, promising, at his expense, to take plaintiff to where the child was located and permit her to talk and be with the child, and, at the close of the school term, return her to Posey county and deliver her to plaintiff and obey any orders of the Posey Circuit Court in reference to the care and custody of the child. Wilbur, pursuant to his promise to the Governor, took plaintiff to the town of Wauchula, Florida, where the child was located and where she was allowed to remain for three weeks, but, during all of that time, Wilbur, his father and mother kept exclusive control of the child and refused plaintiff to be with her alone, and during which time, they (Wilbur, his father and mother) treated plaintiff scornfully, coldly and unbearably, finally ordering her to return home, which she did; that in June,

1918, the child was returned by defendants to their home in Posey county and Wilbur received a pardon. Plaintiff, on learning of the child's presence in the state, commenced proceedings to restrain the removal of the child from Posey county until her petition asking a modification of the divorce decree could be heard, but, before service upon defendants could be had, Wilbur, in the month of June, 1918, again abducted the child and removed it beyond the jurisdiction of the court, aided, abetted and assisted by his codefendants; that on June 25, 1918, the Posey Circuit Court modified the divorce decree by giving plaintiff the exclusive care and custody of the child, although, in violation of this decree of the court, defendants wrongfully and maliciously kept, harbored and detained the child in some foreign state or states until about July 1, 1921, during which time plaintiff never saw or was permitted to see, write or correspond with her; that, by reason of the misconduct of the defendants, this plaintiff was compelled to and did incur expenses in the sum of $5,000 by way of travel, board bills, employing lawyers, detectives and police officers in pursuit of the child, and in an effort to locate, find and to regain the possession and custody of her; that, by reason of the wrongs and misconduct of the defendants for a period of nine years continuously, the affections of the child for its mother were undermined, alienated and destroyed, and plaintiff entirely deprived of the comfort, companionship, society, assistance and services of the child, whereby she suffered great and agonizing distress of both mind and body whereby her happiness, peace of mind and health were destroyed.

Appellants answered the complaint by a general denial, and the two and six-year statutes of limitations, and by a general denial to the supplemental complaint. The asserted immaterial allegations in the complaint included in the court's instructions, the two-year statute

of limitations, and the admission of certain exhibits and testimony over objection, form the basis for practically all the questions submitted to this court for review.

The question on the two-year statute of limitations is presented in various ways, that is to say, by objections to the introduction of certain evidence, and by exceptions to the giving and refusing to give certain instructions to the jury. The instructions given by the court upon its own motion and relied upon as error are Nos. 2, 5, 6, 7 and 8, and No. 9 tendered by appellee, and the refusal to give Nos. 5, 13 and 14 tendered by appellants.

Instruction No. 2, as also instruction No. 5, tendered and refused each assumed to state the material allegations of the complaint. Number 2 covers nearly six pages and No. 5 slightly more than two pages of appellants' printed brief. Our reference to these instructions, in connection with the substance of the complaint herein, will indicate the questions involved without incorporating them into this opinion.

Appellants insist that No. 2 is erroneous, for the reason that it includes prejudicial immaterial allegations of the complaint, which were omitted in their tendered instruction No. 5. Both eliminate all reference in the complaint to the grounds for the divorce, the indictment, conviction, sentence, imprisonment, escape and pardon of Wilbur by the Governor. The asserted immaterial allegations omitted in appellants' tendered instruction and included in No. 2 given by the court related to the alienation of the affections of the child, depriving the mother of the child's society and companionship; the proceedings on the part of appellee to secure possession of the child in 1918; the proceedings to modify the divorce decree; the second abduction by Wilbur; the proceedings in the Gibson Circuit Court; the exercise of undue influence by writing letters; distress of mind and body and injury to health of appellee.

Counsel for appellants are correct in saying that the jury should be fairly and fully informed respecting the issues of the case it is called upon to try (§571 Burns 1926) and that this can be done only by instructions.

1.

Generally speaking, it is not reversible error for the court, in the course of its instructions, to read to the jury the pleadings tendering the issues to be tried (*Clouser* v. *Ruckman, Admr.* [1886], 104 Ind. 588, 4 N. E. 202; *City of Indianapolis* v. *Moss, Admr.* [1920], 74 Ind. App. 129, 138, 128 N. E. 857, and cases there cited), but that was not done in this case. The court, by instruction No. 2, specifically told the jury what it regarded as the material allegations of the complaint. This instruction had the effect of taking out of the case the omissions to which we have called attention. The cause of action thus stated to the jury, together with the averments of the separate answers of each of these appellants tendering certain statutes of limitations as a complete bar to or in part of plaintiff's cause of action, and covered by the court's instruction No. 8, thereby submitted to the jury certain ultimate questions of fact, the answers to which determined largely the controverted points between the parties, and, to a considerable extent, may have affected the basis upon which the jury measured the damages as outlined by instruction No. 11 given at the request of appellee, and by the court's instruction No. 7.

2.

We do not regard instruction No. 2 erroneous because of the above asserted immaterial matters, for, according to the complaint, they were a part of the wrongful acts that brought about mental suffering, loss of health and physical impairment of the mother, for which damages were claimed. But it is said that the allegations of mental pain and suffering, and the alleged wrongful acts in the supplemental complaint, and, in the light of the

evidence in this case, all wrongful acts alleged in the original complaint as having occurred more than two years prior to the commencement of this action, were not material allegations and should not have gone to the jury. The questions thus sought to be raised, except the question on permitting the filing of the supplemental complaint, and the court's refusal to strike it out, are more directly presented by other instructions and by objections to the admission of evidence.

The court told the jury that the supplemental and original complaint should be considered as the complaint. Appellants say to thus inform the jury was error because the supplemental complaint really tendered a new cause of action. As we view the two pleadings, the supplemental complaint merely alleged the continuation by certain of the defendants of wrongful acts of the same general character as those charged in the original complaint but as having occurred since the filing of it. On this point, the instruction was correct. *Pouder* v. *Tate* (1892), 132 Ind. 327, 30 N. E. 880; *Muncie, etc., Traction Co.* v. *Citizens' Gas, etc., Co.* (1912), 179 Ind. 322, 100 N. E. 65; *Indiana Pipe Line Co.* v. *Christensen* (1924), 195 Ind. 106, 114, 143 N. E. 596; §427 Burns 1926. For it is the policy of the law to grant relief as far as possible for all wrongs complained of growing out of the same transaction and thus put an end to litigation. *Richwine* v. *Presbyterian Church of Noblesville* (1893), 135 Ind. 80, 34 N. E. 737; *Muncie, etc., Traction Co.* v. *Citizens' Gas, etc., Co., supra.*

The record before us discloses considerable evidence admitted over the separate and several objections of these appellants. The evidence thus questioned may be divided into four classes: (1) That which referred to acts and conduct of appellants in refusing to permit the mother to have or be with the child while at their home in September, 1911, after plaintiff and defendant Wilbur

had separated and the child left by Wilbur with his
parents, which was prior to the granting of the divorce
and decree relative to the custody of the child.    The
divorce and child custody decree was rendered May 3
1912.   Appellants sought to exclude this evidence on
the ground that the father was entitled to the custody
of the child and, having placed it in the home of his
parents, which was also the then home of appellants
Estella and Chester, their acts and conduct were not
objectionable, nor did they tend to prove a conspiracy;
(2)    that which tended to prove acts and conduct of the
defendants prior to the two years next before the com-
mencement of this action.    The objection to this evi-
dence was upon the theory that plaintiff's cause of action
accrued at the time of the abduction of the child in
August, 1912, and all acts and conduct of these appel-
lants prior to August 29, 1919, were improperly admitted
as a basis upon which to assess damages; (3) that which
tended to support the allegations of the supplemental
complaint.    Appellants insist that this evidence was
inadmissible for the reason that anything that occurred
after the commencement of this action would not in any
manner furnish a basis for the recovery of damages;
(4) evidence tending to show mental suffering and phys-
ical injury or loss of health by plaintiff.    The admission
of this evidence was challenged because plaintiff's re-
covery was limited entirely to the value of the child's
services and to any money expended by plaintiff to re-
gain its possession.

The gist and theory of this action is for damages re-
sulting from various unceasing and continuous wrongful
    acts concurring to the injury of complainant.

5.    Appellee insists that the wrongful acts began
        when appellants united and combined with T.
Wilbur Montgomery (§2882 Burns 1926) to take and
carry away Eloise Montgomery, a child under the age of

fourteen years, with intent then and there and thereafter to unlawfully detain and conceal her from her mother, who was then and at the time this action was commenced lawfully entitled to her charge and custody. §2427 Burns 1926. The complaint not only charged these appellants with the formation of a conspiracy to commit a felony, but with continuous overt acts up to the time of the trial in furtherance of its actual consummation. It is true, the mere formation of a conspiracy to do an unlawful act will not furnish grounds for a civil action, but, where a felony is accomplished as the result of the conspiracy, to the injury of another, the conspirators, although not liable in such a case for exemplary damages, are liable for compensatory damages for the injuries thus inflicted. *Gunder* v. *Tibbits, Admr.* (1899), 153 Ind. 591, 55 N. E. 762; *Magnuson* v. *O'Dea* (1913), 75 Wash. 574, 580, 135 Pac. 640, 48 L. R. A. (N. S.) 327, Ann. Cas. 1915B 1230. In *Cleveland, etc., R. Co.* v. *Hilligoss* (1908), 171 Ind. 417, 423, 86 N. E. 485, it was said: "When more persons than one unite in the commission of a wrong, each is responsible for the acts of all and for the whole damage."

We are not advised as to the residence of Wilbur in August, 1912. The evidence shows that his father, with whom Chester and Estella were then living, 6. demanded of and received from appellee the possession and custody of the child for the months of July and August, 1912, which was in keeping with the order of the court in the divorce proceedings made the previous May 3. At the time the child was abducted by its father, it was rightfully in the possession of the grandparents, but it is equally clear that they were then fully apprised of the termination of that right in favor of appellee on September 1. In the face of this knowledge, there is evidence, although denied, that some of the Montgomery homestead residents packed the

child's clothing, and, at about 9 o'clock in the evening, John E. Montgomery, at his home, delivered the child and its clothing to an emissary of Wilbur. The child was taken away in a buggy by Wilbur and Chester, and thereafter, without the consent of the mother, concealed and detained in various states and countries until the year 1918. The circumstances connecting those residing at the Montgomery home with the delivery of the child to Wilbur, and the assistance then rendered him by them, would tend to support the inference of a previous understanding between Wilbur and these appellants of the purpose which moved them to surrender the child. Here we may notice the assertion of appellants that no wrong was done appellee by the abduction of the child in August, 1912, because, at that time, she was rightfully in the possession of her grandparents. There is no merit in this claim, for, at that time, as the grandparents well knew, the child was only temporarily with them and that the mother was legally entitled to her the following September 1st. *Howell* v. *Howell* (1913), 162 N. C. 283, 78 S. E. 222, 45 L. R. A. (N. S.) 867, Ann. Cas. 1914A 893; *Hare* v. *Dean* (1897), 90 Me. 308, 38 Atl. 227; *Steele* v. *Thacher* (1825), 1 Ware (U. S. Dist. App.) 85, 97, 98.

Direct evidence of a conspiracy can seldom be obtained, and, for that reason, it is well settled that conspiracy may be shown by isolated and independent facts. *Cook* v. *State* (1907), 169 Ind. 430, 82 N. E. 1047; *Roberts* v. *State* (1919), 188 Ind. 713, 124 N. E. 750. Under this rule, authorizing the finding of a conspiracy upon circumstantial evidence alone, the field of inquiry is broadened to allow the trial court a wide discretion in the admission of evidence showing the relation the parties to the conspiracy bear to each other, their interest in the success of the act to

be accomplished, or the motive for its formation.
*Moore* v. *Shields* (1889), 121 Ind. 267, 23 N. E. 89.
"Any joint action on a material point, or collocation of
independent but co-operative acts, by persons closely
associated with each other, is held to be sufficient to
enable the jury to infer concurrence of sentiment." 2
Wharton, Crim. Law (9th ed.) §1398.

Returning to the manner, acts and conduct of appel-
lants, other than Chester, toward appellee in September,
1911, shown by the evidence and above classified
as (1), and especially the separation which oc-
curred a few days prior thereto, followed by the
divorce action brought by Wilbur, October 2, and cross-
complaint filed a few days later by his wife, might well
support an inference even then of an aggressive hostility
by appellants toward appellee, if not a settled, deter-
mined, anger-enthused interest in favor of Wilbur hav-
ing the exclusive custody of the child. The mere fact
that appellants, in September, denied appellee the right
to see and hold her child while at their home would be of
slight legal consequence, but when their then acts and con-
duct are considered in connection with what thereafter
transpired, in which they had a part, we regard them as
competent as tending to show a disposition and concur-
rence of sentiment in the common purpose thereafter
accomplished, and sufficiently germane to the charge in
the complaint—formation of a conspiracy—notwith-
standing the challenge of remoteness. The remoteness
of the evidence might affect its weight, but not neces-
sarily its admissibility.

It will be unnecessary for us to notice refused instruc-
tions Nos. 13 and 14, or the evidence above classified
(2), as the same questions are presented by the court's
instruction No. 8.

Appellants are here insisting, as they did in the court
below, that whatever they may have done toward pre-

venting appellee from having the custody of her child, or for any injury they may have caused her by reason of its abduction more than two years prior to the commencement of this action, was within the statute of limitations. Moreover, that instruction No. 8 had the effect of extending the limitation period beyond two years if some of the acts charged in the complaint were done by them or either of them within the two-year period, and that this instruction was erroneous for the further reason that it submitted to the jury the question of when the cause of action accrued, and whether or not it, or any part of it, was barred by the statute.

The statute upon which appellants rely (§302 Burns 1926, §293 R. S. 1881) provides that actions "for injuries to person or character . . . shall be commenced within two years after the cause of action has accrued, and not afterward."

The instruction in question, in substance, told the jury that by certain answers the defendants separately had pleaded the statute of limitations which provides that actions for injuries to persons or character must be commenced within two years after the cause of action accrued and not afterwards. To these answers, plaintiff had replied by a general denial, which tendered an issue of fact for the jury to determine. After stating that this action was commenced August 29, 1921, and that it accrued when plaintiff sustained damage, if any, and was barred by statute unless brought within two years from that time, it continued as follows: "If, however, you find from a fair preponderance of all the evidence that all the material allegations of the complaint are proved and if you so further find that the acts of the defendants were done in furtherance of the conspiracy, as charged in the complaint, and for the purpose of depriving the plaintiff of the possession of the child and alienating its affections, and that some of the acts were so done by

them, or either of them, within two years of the time within which this action was commenced, and if you further find that the plaintiff, during all of said time from the said 6th day of August, 1912, until the period of time within two years of the commencement of this action, was endeavoring to recover possession of said child, and if you further find that the injurious consequences of the alleged wrongful acts, if any, were not fully accomplished until a period within two years of the commencement of this action, then this cause of action did accrue within two years fixed by the statute and is not barred, and the plaintiff would not be limited in the amount of her recovery to such damages as she sustained within two years prior to the time of the commencement of this action, if you find that she has sustained damages by reason of the acts of the said defendants."

The court had stated to the jury the material allegations of the complaint, the meaning of the words "preponderance of the evidence," correctly informed the jury as to the facts essential to the formation of a conspiracy, and, upon appellants' request, that the burden was on the plaintiff not only to prove by a preponderance of the evidence every material allegation of her complaint, but she must prove that these appellants had some part in the abduction of the child by Wilbur, or that they subsequently, by some active means, aided and abetted him in keeping the child away from plaintiff. Furthermore, that the grandparents would not incur any liability in this action merely because of such relationship, nor would they be liable merely because the child was abducted from their home; nor did these appellants, naming them, assume any burden of proving or disproving any of the facts in issue. After the court had thus admonished the jury, it will be seen that by the instruction now in question it made its pronouncement of the law applicable to the two-year statute of limitations de-

pend upon the finding by the jury of certain facts. These facts, other than the efforts of appellee to regain possession of the child after September 1, 1912, had to be found from sharply conflicting evidence. The instruction in question proceeded upon the theory that the time when this action accrued was a mixed question of law and fact, and if so, it was a question for the jury.

In addition to the evidence we have already briefly noticed, and without attempting to summarize the 852 typewritten pages of evidence in the record, a recital of which required 245 printed pages of appellants' brief, covering the acts and conduct of Wilbur, these appellants and appellee during a period of approximately eleven years, we direct attention to the evidence bearing upon the return of the child to the home of these appellants by Wilbur in June, 1918; proceedings immediately begun by appellee in the Posey Circuit Court to restrain Wilbur and these appellants from again removing the child out of the State of Indiana, and to modify the part-time custody order in favor of the grandparents, but, before notice to them could be given, Wilbur again carried the child out of the State of Indiana, and thereupon the grandparents consented to an order made giving the child into the exclusive custody of appellee; the treatment of appellee and the dominant control of the child by Wilbur and its grandparents at Wauchula, Florida, in January, 1918; its care and training, under an assumed name, by Estella in other states and countries practically all the time from about September 1, 1912, until July, 1921, of which time, from March, 1913, until the fall of 1915, she had the entire exclusive control and custody of it, and, in November, 1915, took the child to Cuba, where Wilbur was then a fugitive from justice; appellants' active opposition to the *habeas corpus* proceedings instituted by appellee in the Gibson Circuit Court in July, 1921, for possession of the child then in

the custody of appellants; their efforts to have the mother's treatment of the child investigated by the Juvenile Court in Indianapolis in the fall of 1921; the effect on the child and purpose of the letters in evidence written by Estella and her mother and communications by Wilbur through others; the placing of cash in an Indianapolis bank for the use of the child in paying for her transportation and expenses from Indianapolis to Wauchula, Florida, and the child's departure, unannounced to appellee, on July 3, 1923, for the home of her father as her permanent residence; evidence, undisputed, showing a considerable sum of money expended by appellee, and diligent and continuous efforts by her personally and by the employment of detectives, agents and lawyers during the nine-year period next before the commencement of this action to obtain the possession and custody of the child, finally successful only by means of the above mentioned *habeas corpus* proceeding; all of which were matters and circumstances for the jury and pertinent for its consideration in determining the question of whether or not the evidence preponderated in favor of its finding of one continuous wrong.

Many authorities have been cited in support of the well-settled rule that "for injuries to person or character," the statute of limitations begins to run from 10-12 the time a cause of action accrues, but the accrual of a cause of action, it must be remembered, depends upon the uniting of at least two elements—injury and damages. In the instant case, we have referred, in a general way, to the wrongful acts continuing over a period of nine years. Whether or not these acts formed an unbroken chain from the time they began until within the period of two years next before the bringing of this action, and were of such continuity as to constitute one wrong which was the proximate cause of the alleged personal injuries and damages suffered by ap-

pellee, were facts for the jury and the basis for determining when the cause of action accrued. The two-year statute of limitations will not begin to run as a shield against the consequences of wrongful acts until the wrong-doer thereby accomplishes an injury to the person of another, for which the law allows indemnity in the form of damages, that is to say, damages susceptible of ascertainment, for not until then would the cause of action accrue to invoke the statute. *Board, etc.,* v. *Pearson* (1889), 120 Ind. 426, 22 N. E. 134, 16 Am. St. 325; *City of North Vernon* v. *Voegler* (1885), 103 Ind. 314, 2 N. E. 821; *Bockman* v. *Ritter* (1898), 21 Ind. App. 250, 52 N. E. 100; *Jones* v. *Texas, etc., R. Co.* (1910), 125 La. 542, 51 So. 582, 136 Am. St. 339.

Injury precedes damages. Hence, damages susceptible of ascertainment resulting from injuries to person would ordinarily be the test for determining when a cause of action exists (17 R. C. L. 765), but where, as here, "the action is for the damages resulting from the various consequences of one continuous wrong" (*Gunder* v. *Tibbits, Admr., supra*), the statute of limitations will not begin to run until there is a cessation of the overt acts constituting the wrong. *Farneman* v. *Farneman* (1910), 46 Ind. App. 453, 458, 90 N. E. 775. The conspiracy charge, if proved, is effective to enlarge the group of persons each responsible for the acts of the others, not only in continuing the wrong, but for damages resulting from each other's acts. *Eacock* v. *State* (1907), 169 Ind. 488, 498, 82 N. E. 1039; *McKee* v. *State* (1887), 111 Ind. 378, 12 N. E. 510. But where all of the overt acts of the conspirators are without the two-year period, the mere fact that such acts were done in furtherance of a conspiracy would not extend the statute of limitations so as to preserve a right of action otherwise barred, for a civil action is only concerned in the injury which results from the unlawful combination. *VanHorn*

v. *VanHorn* (1893), 56 N. J. Law 318, 321, 28 Atl. 669; *Reed* v. *Wilson* (1888), 2 Monag. (Pa. Sup. Ct.) 612.

Referring to the court's instructions Nos. 5 and 6, and No. 9 tendered by appellants and refused, the jury was told, in substance, by instruction No. 5 that if Wilbur abducted the child in 1912 from the "home of the grandparents without their knowledge or consent, and not in pursuance of any previous arrangement between him and them and that they did not aid him or the other defendants at any time thereafter in keeping the child from the plaintiff, *or in causing her to become estranged from the plaintiff* (our italics), as charged in the complaint," then "the grandparents incurred no liability to the plaintiff . . . "; and by instruction No. 6, after naming all of these appellants and stating their kinship to the child, it was said: "The law recognizes the natural affection common to persons so related. The circumstances that the parents of this child had been divorced, and that there was a conflict between them in respect to which should have the care and custody of said child, did not require that either the grandparents or the aunt or the uncle should cease to treat said child with the love, tenderness and regard which should characterize his or her treatment of her if there had been no such divorce and conflict, or to so conduct himself toward her as to estrange the child's respect and natural affection, and if you find from the evidence that either the grandfather or the grandmother or the aunt or uncle did no more than to respond to the impulses of natural affection and treat said child as persons so related would have done naturally and did not use any means to take or to keep said child from the plaintiff *or to alienate or destroy the affections of said child for its mother* (our italics), then such defendants did not incur any liability."

Instruction No. 9 was properly refused for the reason it would have advised the jury that these appellants

owed the father of the child the duty not to estrange or do anything that would "cause the child to cease to respect and love him," and, therefore, inferentially that, in obedience to this duty, anything that they may have done in aid of the father's retention of the child was justifiable. Neither the issues nor the evidence in this case justified such an inference of law. Otherwise, the material difference between it and No. 6 was, that it omitted the italicized clause in the latter.

In this connection, appellants insist that the two instructions given, Nos. 5 and 6, were not only erroneous but harmful, because of the estrangement and alienation of affections clauses, in that there was no evidence to support them nor were they items which the jury might consider in assessing damages.

The claim of no evidence to support estrangement or loss of affections of the child for its mother is not well taken, for there was much evidence from which the jury might infer that, up to the time the child was carried away, it loved affectionately its mother, but at the time this action was commenced, nine years later, the child, then a miss of fifteen, apparently had no such love and affection. Moreover, at the time of the trial, the child of 1912 was a young lady of seventeen, and although she had been under the supervision of her mother for two years next before that time, she never became responsive to her mother's love and affection, and testified that, during her concealment from her mother and thereafter, appellants never mentioned her mother at all. They never told me things against mother and "never talked about her at all to me." "They would never speak of her." From this evidence, the jury might reasonably have concluded that such concerted action on the part of appellants was to avoid reminding the child of its mother and to keep its

attention directed to others, with the ulterior motive of reconciling the child to those alone who had charge of her, or to obliterate from the child's mind any thoughts of her mother.

The instructions, in the particulars mentioned, were within the issues and pertinent to the evidence, and if they might be considered in connection with other paragraphs of the instructions as additional wrongful acts, which together proximately caused the injuries entitling appellee to compensatory damages, they would not be subject to criticism. But, disconnected as they are, they cannot be so treated. These instructions, followed as they were by one (No. 7) assuming to enumerate the elements to be considered by the jury in awarding damages, and including as one of such elements loss of "affection of said child for plaintiff, if any," would tend to impress the jury with the thought that the defendants would incur liability if they merely destroyed the affections of the child for its mother. Answering appellants' contention, appellee insists that she has a right of action for the alienation of her child's affections and has cited authorities which correctly hold that a husband whose wife is enticed away from him may maintain an action for the alienation of her affections as well as for the loss of her companionship and services. But the relationship between a husband and wife is different from that between a parent and child. The foundation of an action for the alienation of affections brought by a husband or wife and an action by a parent for the abduction of his minor child is not the same. The former action is grounded upon the loss of the consortium or conjugal relations, and is classified by text writers and the courts as controlled generally by the doctrine of seduction, and the injury inflicted in the nature of slander. 1 Bishop, Mar., Div. and Sep. §§1360, 1361; *Higham* v. *Vanosdol* (1885), 101 Ind. 160; *Wales* v. *Miner* (1883), 89 Ind.

118, 121; *Bockman* v. *Ritter, supra; Adams* v. *Main* (1891), 3 Ind. App. 232, 29 N. E. 792, 50 Am. St. 266; *Farneman* v. *Farneman, supra.* While the action for abduction originally, both in England and this country rested upon the loss of service and the necessary expense in reclaiming the child (*Magee* v. *Holland* [1858], 27 N. J. Law 86), the modern doctrine, especially in this country, authorizes an action founded not only for the loss of services and money necessarily spent in pursuit, but for the unlawful deprivation of custody, possession and companionship of the child, as also for the outrage, insult offered, and injury the parent, or one standing in *loco parentis*, may sustain from such a physical invasion. *Washburn* v. *Abrams, etc.* (1906), 122 Ky. 53, 90 S. W. 997; *Soper* v. *Igo, Walker & Co.* (1905), 121 Ky. 550, 89 S. W. 538, 1 L. R. A. (N. S.) 362, 123 Am. St. 212, 11 Ann. Cas. 1171; *Selman* v. *Barnett* (1908), 4 Ga. App. 375, 61 S. E. 501; *Shoemaker* v. *Jackson* (1905), 128 Iowa 488, 104 N. W. 503, 1 L. R. A. (N. S.) 137; *Clark* v. *Bayer* (1877), 32 Ohio St. 299, 30 Am. Rep. 593; *Howell* v. *Howell, supra,* 45 L. R. A. (N. S.) 867, 870, note; *Magee* v. *Holland, supra.* But our attention has not been called to any case of the class at bar, nor do we know of any, which permits loss of affections as one of the elements for which damages may be assessed. We do not mean to say that the child's loss of affection for its parent, through the willful wrongs of another, would not be proper for the jury to consider, but only for the purpose of determining its mental or physical effect, if any, on such parent.

Referring again to instruction No. 7, and to that part of it enumerating the elements for which damages might be given, the jury was told that it "may consider the expenses, if any, incurred by the plaintiff in her attempt to regain possession of said child after the possession had been awarded her by the decree

of the court; also the reasonable value of the services of said child, if any, during the time the child was wrongfully kept from the plaintiff by the defendants up to the time of bringing this action. You may also consider the loss of the companionship and affection of said child for the plaintiff, if any, and the physical and mental suffering of the plaintiff, if any, produced by the acts of the defendants." In this same instruction, the jury was charged not to award exemplary or punitive damages. We disapprove only that part of the instruction which includes loss of affection. Otherwise, the instruction is approved on the theory that where an act has been wrongfully and intentionally done which gives a right of action for damages, any physical or mental suffering which may have been thereby caused can be taken into account in determining the amount of damages to be allowed because of such wrong. *Kline* v. *Kline* (1902), 158 Ind. 602, 64 N. E. 9; *McCarty* v. *Kinsey* (1900), 154 Ind. 447, 448, 57 N. E. 108; *Wolf* v. *Trinkle* (1885), 103 Ind. 355, 357, 3 N. E. 110. Furthermore, in line with what we have already said, if the parent, by evidence, has sustained his cause of action, the jury, in assessing damages, although limited to the primary right of the plaintiff invaded by defendants and the relief demanded, may, subject to such limitation, take into account actual or constructive loss of the child's services, necessary expenses and trouble in recovering possession of it, the aggravated nature of the abduction, mental suffering and physical injury inflicted on the parent caused by the alleged wrongful acts and conduct of the abductor and any others who may have aided, abetted, assisted, encouraged or engaged in the willful wrong. *Stowe* v. *Heywood* (1863), 7 Allen (89 Mass.) 118; *Soper* v. *Igo, Walker & Co., supra; Howell* v. *Howell, supra; McGee* v. *Holland, supra; Magnuson* v. *O'Dea, supra;* 20 R. C. L. 618, §27.

Montgomery *v.* Crum—199 Ind. 660

During the trial of this cause, appellee. introduced much evidence over the objection of these appellants.

Many of the questions thus saved for. our consideration were also presented in other forms, to which we have given attention. However, there is one question which calls for some expression of opinion in case this cause is retried. The plaintiff introduced in evidence, over the objection and exception of these appellants, a certified copy of the record showing that T. Wilbur Montgomery, in the Posey Circuit Court, was arraigned on an indictment for child stealing, and pleaded not guilty; that he was tried by a jury and found guilty as charged in the indictment, and his age twenty-nine years; that, after he had filed a motion for a new trial and a motion in arrest of judgment, each of which had been overruled, the court entered a judgment to the effect that he was guilty as charged in the indictment; that he pay a fine of $50 and the costs of the prosecution, and that he be imprisoned in the Indiana Reformatory for not less than two years nor more than fourteen years. Appellee insists that this record was competent, citing *Maple* v. *Beach* (1873), 43 Ind. 51; *Dorrell* v. *State* (1882), 83 Ind. 357. The instant case is not a suit upon the judgment introduced in evidence requiring proof of its existence, nor is it an action where the rights of the parties thereto have been formerly adjudicated. Whether or not Wilbur had been convicted of a felony was not in issue. The issue on trial was whether or not any lawful rights of plaintiff had been invaded by reason of which she sustained damages. The admission of the judgment in evidence was for the purpose of showing such invasion, and was not competent for that purpose. "The general rule undoubtedly is that the judgment of conviction in a criminal prosecution cannot be given in evidence in a civil action, especially where the civil suit is for damages occasioned by the offense of which the

party stands convicted." 15 R. C. L. 1000, §477. One reason for this rule is the dissimilarity between civil and criminal actions in objects, issues, results, procedure, parties, and in the application of the rules of evidence both as to weight and competency. 15 R. C.L.1002, §478.

It is quite obvious that if Wilbur had been acquitted of the charge of child stealing, the judgment of acquittal or the finding that he had not committed the felony would not be competent evidence in his favor in this action for damages on account of an alleged civil wrong done to his wife, nor was such judgment competent to prove such wrong in her favor. *Fowle* v. *Child* (1895), 164 Mass. 210, 41 N. E. 291; *Woodruff* v. *Woodruff* (1834), 11 Me. 475; *Robinson* v. *Wilson* (1849), 22 Vt. 35, 52 Am. Dec. 77; *Myers* v. *Maryland Casualty Co.* (1907), 123 Mo. App. 682, 101 S. W. 124; *Corbley* v. *Wilson* (1874), 71 Ill. 209, 22 Am. Rep. 98. Had Wilbur pleaded guilty to the charge commonly known as "child stealing" (§2427 Burns 1926), that fact would be competent evidence against him in a civil action for damages resulting from that criminal act, on the theory of an admission on his part that such fact is true, but this principle does not extend to make the judgment of conviction competent as tending to prove any facts at issue in the civil action. *Rudolph* v. *Landwerlen* (1883), 92 Ind. 34; *Hamm* v. *Romine* (1884), 98 Ind. 77, 81; *Myers* v. *Maryland Casualty Co., supra,* p. 690; *Mead* v. *Boston* (1849), 3 Cush. (Mass.), 404.

We express no opinion on the other causes—insufficient evidence, verdict contrary to law, damages excessive—assigned in support of the several motions for a new trial, for the reason that, upon a retrial of this cause, the evidence and conclusions thereon may not be the same as that disclosed by the record before us.

Because of errors pointed out in instructions Nos. 7 and 8 given by the court on its own motion, and the ad-

mission in evidence of the record in the criminal action, the judgment is reversed.

Judgment reversed, with instructions that the trial court grant the motion of each appellant for a new trial, and for further proceedings not inconsistent with this opinion.