WILSON H. WARREN, HELEN V. WARREN, GEORGE L. DIVEN, ADMINISTRATOR OF THE ESTATE OF ROBERT DAVID WARREN *v.* CITY OF INDIANAPOLIS, JOHN K. CHANDLER

[No. 2-1275A365. Filed May 25, 1978. Rehearing denied November 8, 1978. Transfer denied May 10, 1979.]

*John L. Fox, Frank E. Spencer*, of Indianapolis, for appellants.

*Rex P. Killian, John C. Ruckelshaus, Ruckelshaus, Bobbitt & O'Connor, David R. Frick*, Corporation Counsel, William L. Soards, Soards & Carroll, of Indianapolis, for appellees.

## CASE SUMMARY

BUCHANAN, C.J.—Plaintiff-Appellants George L. Diven, et al (Administrator) appeals from a negative judgment in a wrongful death action claiming the trial court erred by failing to give a tendered instruction and by granting a motion in limine.

We affirm.

## FACTS

On May 30, 1970, at 8:00 P.M., Robert Warren (Warren) ingested a handful of secobarbitol pills while in his father's home in Indianapolis. His father, fearing that the pills and alcohol would have serious effects, attempted to take him to the hospital. En route, Warren jumped from the car, and eluded his father who attempted to find him.

At 12:24 A.M., May 31, Officer John Chandler (Chandler) of the Indianapolis Police Department received a report of an unconscious man

in downtown Indianapolis. Upon investigation, Chandler found Warren unconscious in a parking lot near a tavern. Believeing him to be drunk, Chandler tried to place him in his squad car and take him to a hospital. However, he decided to leave Warren in a grassy field in order to "sleep it off". Later that night Warren died from barbituate intoxication.

A police disciplinary hearing was subsequently held which apparently found Chandler guilty of violation of a police regulation.

Warren's parents and the Administrator brought an action against Chandler and the City of Indianapolis claiming wrongful death. Immediately prior to trial Chandler's attorney filed a motion in limine which, in relevant part, reads as follows:

### MOTION IN LIMINE

Come now the defendants and each of them and move the Court, prior to the introduction of evidence and jury selection in the above entitled cause and in an effort to avoid the interjection of improper and prejudicial matters and in anticipation that plaintiffs' counsel would allude to certain such matters, for a protective order in limine as follows:

1.) That plaintiffs and plaintiffs' counsel not allude or make reference to any prior criminal proceedings or disciplinary proceedings involving the defendants, City of Indianapolis and/or John K. Chandler, in regard to matters following the occurrence of May 30, 1970 and May 31, 1970. That plaintiffs and their counsel be precluded from using any remark, statement, question, answer, inference, innuendo or testimony of any nature which might inform the jury or infer to the jury the forementioned circumstances.

The Motion as to paragraph #1 was granted.

At the conclusion of the trial the Adminstrator offered the following instruction which was rejected by the court:

I instruct you that a municipality has a duty to maintain its streets and public ways and to render assistance, attendance and/or treatment to persons found thereon in conditions of apparent helplessness.

Instead, the court gave the following negligence instruction which was not objected to by either party:

Negligence, either on the part of the Plaintiffs or the Defendants, is the failure to do what a reasonably careful and prudent person would have done under the same or like circumstances, or the doing of some thing which a reasonably careful and prudent person would not have done under the same or like circumstances; in other words, negligence is the failure to exercise reasonable or ordinary care.

Reasonable care or ordinary care, on the part of both the Plaintiffs and the Defendants, is such care as a reasonably careful and ordinarily prudent person would exercise under the same or similar circumstances.

## ISSUES

Following a judgment in favor of the City, the Administrator brings this appeal and raises the following issues:[1]

1.  Did the trial court err by granting a Motion in Limine which excluded evidence of police disciplinary measures taken against Chandler?

2.  Did the trial court improperly refuse to give defendant's tendered instruction on duty to render assistance to a helpless person?

Initially, the Administrator contends the trial court erred by failing to allow testimony regarding the outcome of Chandler's disciplinary hearing. He argues that this hearing amounts to an admission against interest and should have been admissible.

The City replies that the disciplinary hearing had totally different issues and burden of proof from this trial and is irrelevant. Also, it compares the hearing to safety measures which are instituted subsequent to an accident which, for public policy reasons, are considered to be inadmissible at trial.

Secondly, the Administrator contends that his instruction on the duty of the City in aiding people on the city streets should have been adopted

---

1.  The Administrator also argues that sustaining of the motion in limine wrongfully prevented him from cross-examining Chandler about prior inconsistent statements made at the disciplinary hearing. However, the Administrator has failed to specifically raise that issue in his Motion to Correct Errors and thus has waived it. *Heminger v. Police Com'n of City of Fort Wayne* (1974), 161 Ind.App. 72, 314 N.E.2d 827, 836.

by the trial court. The City responds that the negligence instruction given was sufficient.

## DECISION

*Issue One*

*CONCLUSION* — It was not error to grant Chandler's motion in limine.

The Administrator's brief is barren of any cases in which the record of disciplinary proceedings of a police officer was found to be admissible at a later trial; nor does our research reveal any. The cases cited are of an ancient vintage relating to admission of an agent's direct statements concerning contractual or tort liability, *see* e.g. *Los Angeles City Water Co. v. City of Los Angeles*, 88 Fed. 720 (S.D. Cal. 1898); *Farrell v. City of DuBuque*, 129 Iowa 447, 105 N.W. 696 (1906), and are not applicable.

However, a somewhat analogous situation is one in which an attempt is made to introduce a prior criminal judgment into evidence in a civil suit arising out of the same incident. *Montgomery v. Crum* (1928), 199 Ind. 660, 161 N.E. 251; *Hambey v. Hill* (1971), 148 Ind.App. 662, 269 N.E.2d 394. In *Montgomery* and *Hambey* it was determined that, absent a confession, such judgments were inadmissible. As the court observed in *Montgomery*:

> One reason for this rule is the dissimilarity between civil and criminal actions in objects, issues, results, procedures, parties, and in the application of the rules of evidence both as to weight and competency.

> 199 Ind. at 686.

Also to be considered is the difference in the burden of proof required in each type of case. *See Dimmick v. Follis* (1953), 123 Ind.App. 701, 111 N.E.2d 486.

This rational is persuasive. There is nothing in the record to indicate what Chandler was charged with, what the finding of the Police Board was, nor the burden of proof used. The only result of the Police Board inquiry that can be gleaned from the record was that Chandler violated some department regulation ... which violation may or may not have been relevant to his personal tort liability.

Absent some admission of liability on his part, admission of this evidence was irrelevant and properly refused. *See Hambey v. Hill, supra; Rust v. Watson* (1966), 141 Ind.App. 59, 215 N.E.2d 42.[2]

*Issue Two*

*CONCLUSION* — The trial court properly refused to give Warren's tendered instruction as to rendering assistance to a helpless person.

Fundamental to our common law doctrine of negligence is the distinction between "misfeasance," active misconduct which causes injury to another, and "nonfeasance," the failure to take action to protect another from harm. Absent some definite relationship between the parties sufficient to justify the imposition of a duty to act, courts have consistently refused to impose liability for nonfeasance.[3] *See,* W. PROSSER, THE LAW OF TORTS, § 56 (4th ed. 1971).

This common law refusal to recognize "nonfeasance" as a basis for liability is so deeply ingrained in our system of law that courts have refused to require a physician to aid a dying patient, *Hurley v. Eddingfield* (1901), 156 Ind. 416, 59 N.E. 1058, an expert swimmer to aid a drowning person, *Handiboe v. McCarthy* (1966), 114 Ga. App. 541, 151 S.E.2d 905, or a person to cry a warning to one who is walking into a dangerous machine. *Buch v. Amory Mfg. Co.* (1898), 69 N.H. 257, 44 A. 809. *See* PROSSER, *supra.* Such a policy sometimes produces harsh results, but the problems inherent in devising a workable rule have discouraged deviation from the concept of non-liability for mere nonfeasance, (e.g., how is liability imposed on one hundred healthy people who fail to rescue an invalid from a fire?).

The exception to the general rule of non-liability for nonfeasance has arisen in certain cases in which the relationship of the parties is such as to impose a duty to act, e.g., a carrier to a passenger, *Continental*

---

2. We further note that the public interest in prompt disciplining of errant police officers is so great that a city should not hesitate to file charges lest it thereby encourage a jury to hold it liable in damages to the victims of the misconduct.

3. Conceptually, "nonfeasance" does not fit within the bounds of tort law. Tort law contemplates an action ". . . commenced and maintained by the injured person himself, and its purpose is to compensate him for the damage he has suffered, *at the expense of the wrongdoer.*" (emphasis added) W. PROSSER, THE LAW OF TORTS, § 2, at 7 (4th ed. 1971).

*Southern Lines, Inc. v. Robertson* (1961), 241 Miss. 796, 133 So.2d 543; an innkeeper to a guest, *Stewart v. Weiner* (1922), 108 Neb. 49, 187 N.W. 121; a ship owner to a seaman, *Harris v. Pennsylvania R. R. Co.* (4 Cir. 1931), 50 F.2d 866; and an employer to an employee, *Anderson v. Atchison, T. & S. F. R. R. Co.* (1948), 333 U.S. 821.

In *Tubbs v. Argus* (1967), 140 Ind. App. 695, 698-700, 225 N.E.2d 841, 842-843, this Court considered the circumstances in which a duty might be imposed:

... However, in *L. S. Ayres & Company* [*v. Hicks* (1942), 220 Ind. 86, 94, 40 N.E.2d 334, 337], the Supreme Court of Indiana held that "under some circumstances, moral and humanitarian considerations may require one to render assistance to another who has been injured, even though the injury was not due to negligence on his part and may have been caused by the negligence of the injured person. Failure to render assistance in such a situation may constitute actionable negligence if the injury is aggravated through lack of due care." *Tippecanoe Loan, etc., Co. v. Cleveland, etc. R. Co.* (1915), 57 Ind. App. 644, 104 N.E. 866, 106 N.E. 739; *Depue v. Flatau* (1907), 100 Minn. 299, 111 N.W. 1, 8 L.R.A., N.S., 485.

In *Tippecanoe Loan, etc., Co. v. Cleveland, etc. R. Co., supra,* this court held that a railroad company was liable for failing to provide medical assistance to an employee who was injured through no fault of the railroad company, but who was rendered helpless and by reason of which the empoloyee's injuries were aggravated.

The Supreme Court of Indiana in *L.S. Ayres, supra,* found the appellant liable for aggravation of injuries when it failed to extricate the appellee, a six year old boy, whose fingers were caught in the moving parts of an escalator, even though the jury conclusively established that the appellant was not negligent with respect to the choice, construction, or manner of operating the elevator. In so holding, the Supreme Court stated that it may be deduced from *Tippecanoe Loan, etc. Co. v. Cleveland, etc. R. Co., supra,* "that there may be a legal obligation to take positive or affirmative steps to effect the rescue of a person who is helpless and in a situation of peril, when the one proceeded against is a master or an invitor or when the injury resulted from use of an instrumentality under the control of the defendant."

The doctrine of law as set forth in Restatement (Second) of Torts, § 322, p. 133, adds credence to these two Indiana cases. "* * * If the actor knows or has reason to know that by his conduct, whether

tortious or innocent, he has caused such bodily harm to another as to make him helpless and in danger of future harm, the actor is under a duty to exercise reasonable care to prevent such further harm."

No Indiana or foreign case has adopted the broad rule of liability sought by Warren, i.e., that a city has an affirmative duty to avoid to aid people found helpless on its streets. Imposition of such a duty is a task for the Legislature.[4]

It has been recognized that liability may result if a person ". . . does attempt to aid [someone], and takes charge and control of the situation, he is regarded as entering voluntarily into a relation which is attended with responsibility," W. PROSSER, THE LAW OF TORTS, § 56, at 343 (4th ed. 1971), and liability may be imposed for a failure to complete the act, *Concordia Fire Insurance Co. v. Simmons Co.* (1918), 167 Wis. 541, 168 N.W. 199, and the facts of this case would have supported an instruction to this effect. However, no such instruction was requested or given.

Thus we conclude the tendered instruction was properly refused, and the judgment should be affirmed.

Affirmed.

Garrard, P.J. (by designation) Concurs.

White, J. Concurs in result.

NOTE—Reported at 375 N.E.2d 1163.

---

4. The Vermont Legislature has imposed this duty by statute. See VERMONT STAT. ANN. Ch. 12, § 519 (Supp. 1971).