AHARON RAHABI, Appellant, v JACK MORRISON et al., Respondents. °

Second Department, July 6, 1981

APPEARANCES OF COUNSEL

*Ilana Rahabi* for appellant.
*Howard B. Sirota* for respondents.

OPINION OF THE COURT

DAMIANI, J. P.

In 1953 the plaintiff's predecessor in title, Frances L. Furman, was the owner of two city lots on Bay Parkway in Brooklyn. On November 5, 1953 she conveyed a portion of the southerly lot to the defendants Jack and Mary Morrison, retaining for herself the ownership of a 7½-foot-wide strip of land along the northerly side and a 23-foot-wide strip along the easterly side of the southerly lot.

On or about June 11, 1958 Furman conveyed the land of the southerly lot, which she had previously retained, to the Morrisons and they, in turn, granted an easement to Furman, her heirs and assigns, upon the land so conveyed. The easement was appurtenant to the northerly lot, and was to run with the land. By the easement the Morrisons granted to Furman: "Full free and exclusive right and liberty for her, her family, tenants, servants, visitors and licensees, to use the above described land known as Tax Lot 78, Block 6518 for all and any purposes and to have full use and enjoyment thereof without let or hindrance of any kind or manner from the Morrisons, their heirs and assigns, but that Furman may not erect any fence or structure or use the land in any manner which will interfere with light and air of the Morrisons, provided, however, that if Furman shall sell or convey the land and building now known as 4640 Bay Parkway, so that those premises shall not be owned by Furman, her heirs or members of her immediate family, then this easement granted herein to Furman shall cease to be exclusive, and both the grantees of Furman, their heirs and assigns, and the Morrisons, their heirs and assigns, shall have the right jointly to use

and enjoy said land covered by this easement, but that neither may erect any fence or structure or use said land in any manner which will interfere with the air and light of either party; and further provided that Furman, her heirs and assigns, shall pay to the Morrisons, on demand, thirty-four (34%) per cent of the unimproved land tax paid by the Morrisons on the Morrisons' land."

By deed dated July 19, 1966 Mary Morrison became the sole owner of the southerly lot, burdened by the easement in question.

On December 1, 1975 plaintiff became the owner of the northerly dominant lot through mesne conveyances from Furman. It is claimed that on the day before the plaintiff took possession in 1975, the Morrisons constructed a chain link fence between the two lots.

Plaintiff commenced this action by properly effectuating service of the summons and complaint upon the defendants in January 1980, and on March 3, 1980 he served a verified amended complaint. The first cause of action asserted in the amended complaint alleges, in relevant part, (1) that the fence in question was erected by the defendants not upon their own lands but rather upon the lands of the plaintiff and (2) that the effect of the erection of the fence was to deprive plaintiff of the use of his lawful easement. Plaintiff claimed that he had demanded that the defendants comply with the easement, but that they had declined to do so. Plaintiff's second cause of action alleged that as a result of defendants' wrongful acts he would incur counsel fees, costs and disbursements in the expected sum of $5,000. Accordingly, plaintiff demanded that defendants be barred from all claims to an estate or interest in his property, that they be permanently enjoined from interfering with his easement and that he be granted a money judgment against defendants on the second cause of action in the sum of $5,000.

On or about June 18, 1980 defendants moved to dismiss the first cause of action upon the grounds of the Statute of Limitations, failure to state a cause of action and a defense founded upon documentary evidence, and to dismiss the second cause for failure to state a cause of action.

Special Term denied the motion insofar as it was based upon the Statute of Limitations and failure to state a cause of action, but, upon treating defendant's CPLR 3211 motion as one for summary judgment (see CPLR 3211, subd [c]), dismissed the entire amended verified complaint upon the ground that a copy of a survey which had been annexed to plaintiff's original complaint, showed that the fence in question was erected entirely upon the lands of the defendant Mary Morrison. The plaintiff has appealed.

■ Upon oral argument, plaintiff's counsel conceded that the fence was located upon the property of Mary Morrison and accordingly so much of the first cause of action as appears to allege a trespass was properly dismissed. Similarly, the second cause of action to recover attorney's fees, costs and disbursements is without legal merit. The law is well settled that in the absence of a statute expressly authorizing him to do so, or unless the parties have otherwise agreed or stipulated, a civil litigant may neither sue his adversary to recover fees paid to his attorney for legal services, nor, unless the court has directed taxation of such a payment in extraordinary circumstances, tax them as a disbursement *(City of Buffalo v Clement Co.,* 28 NY2d 241, 262-263; 8 Weinstein-Korn-Miller, NY Civ Prac, par 8301.04). A cause of action does not lie to recover costs and disbursements. If plaintiff is the prevailing party in this action he will be entitled to tax them at the foot of the judgment (see CPLR 8101 and 8301). Accordingly, the second cause of action was properly dismissed.

What remains of plaintiff's complaint are those allegations of the first cause of action which seek a permanent injunction upon the ground that defendants have interfered with plaintiff's easement of use and enjoyment by erecting a fence along the boundary line between the two parcels. The questions which now must be addressed are (1) whether those remaining allegations state a cause of action, (2) whether the claim is time barred by the Statute of Limitations and (3) whether the survey constitutes documentary evidence establishing a defense to that claim.

■ An easement proper is an incorporeal right which is appurtenant to the ownership of the dominant estate and

which constitutes a charge upon the servient estate (see 17 NY Jur, Easements & Licenses, § 2). It is a right of property, a nonpossessory interest in land (25 Am Jur 2d, Easements & Licenses, § 2). The owner of land benefited by an easement has two remedies available to seek redress upon a claim that another has interfered with or obstructed his easement rights. He can sue at law to recover damages *(Lambert v Hoke,* 14 Johns 383; *Northern Turnpike Rd. Co. v Smith,* 15 Barb 355, 359; Ann., 47 ALR 552, 553), or he can sue in equity for an injunction *(Brooks v Wheeler,* 243 NY 28, 32; Ann., 47 ALR 552, 557). Where an obstruction to the enjoyment of the easement is of a permanent or continuous nature and the damages for each day's obstruction are insignificant, the remedy of successive actions at law for such damages is inadequate and an action in equity for an injunction will lie (25 Am Jur 2d, Easements & Licenses, § 120). Furthermore, the right to the use of an easement may be lost by adverse possession (see *Castle Assoc. v Schwartz,* 63 AD2d 481, 487) and where an actual obstruction is continuous, exclusive, open and notorious, so that if continued for more than the prescriptive period, it will destroy the easement by adverse possession, an action for an injunction will lie (25 Am Jur 2d, Easements & Licenses, § 120; *Aboud v Bailen,* 289 Ky 536, 539-540). In such a case the damages will be substantial when the adverse possession has extinguished the easement and this is sufficient to justify an injunction to prevent the continued actions which would eventually operate to take a right in real property from the true owner *(Danielson v Sykes,* 157 Cal 686, 691-692). It follows that in alleging that the defendants have wrongfully interfered with his use and enjoyment of the land burdened by the easement by erecting a permanent chain link fence, the plaintiff has stated a good cause of action for an injunction.

Defendants contended at Special Term that plaintiff's cause of action is time barred by the Statute of Limitations contained in CPLR 214 (subd 4), which provides that an action to recover damages for an injury to property must be commenced within three years. The undisputed facts here show that the fence was erected in 1975 and this action was not commenced until 1980. In the recent

cases of *Matter of Paver & Wildfoerster (Catholic High School Assn.)* (38 NY2d 669, 676) and *Sears, Roebuck & Co. v Enco Assoc.* (43 NY2d 389, 394-395) the Court of Appeals held that, generally, the period of limitations to be applied should depend upon the form of the remedy rather than the theory of liability. Thus, had plaintiff brought this action to recover the legal remedy of damages for the alleged injury to his easement, the three-year period of limitations contained in CPLR 214 (subd 4) would have applied. Even then, because the injury was allegedly accomplished by the erection of a permanent structure which constituted a continuous interference with the exercise of plaintiff's rights, it gave rise to successive causes of action, and the statute would only have barred recovery of damages therefor insofar as they accrued more than three years prior to the commencement of this action (cf. *509 Sixth Ave. Corp. v New York City Tr. Auth.*, 15 NY2d 48, 52-53). Plaintiff does not, however, sue for damages. He seeks the equitable remedy of injunction which is governed by the six-year period of CPLR 213 (subd 1) (see 1 Weinstein-Korn-Miller, NY Civ Prac, par 213.01). Thus, the action for an injunction was timely commenced.

Next we note that this case is not governed by RPAPL 2001. That section governs actions to recover damages for, or to enjoin the breach of, negative easements which relate to structures which may be erected upon the defendant's premises. It provides, in substance, that unless suit is commenced before the expiration of two years from the completion of the structure concerned it shall be conclusively presumed that the plaintiff's right of action for relief by way of damages or injunction has been released. In so doing it does not set forth a Statute of Limitations (see Recommendation of Law Revision Commission Relating to Presumption of Release of Right to Enforce Certain Covenants Restricting Use of Land or Right of Action for Damages for Breach of Restriction, 1963 Report of NY Law Rev Comm, pp 345, 346, NY Legis Doc, 1963, No. 65 [K]) and must be interposed either by asserting the defense of release in a motion under CPLR 3211 (subd [a], par 5) or in the defendant's answer (see CPLR 3211, subd [e]).

An affirmative easement is one which grants the owner

of the dominant estate the right to make active use of the servient estate or to do some act thereon or in respect thereto which, were it not for the easement, he would not be privileged to do or which would otherwise be unlawful (Restatement, Property, § 451; 25 Am Jur 2d, Easements & Licenses, § 8; 28 CJS, Easements, § 3, subd d; 17 NY Jur, Easements & Licenses, § 11). A negative easement, on the other hand, is a right in the owner of the dominant estate to restrict the owner of the servient estate in the exercise of the latter's general and natural rights of property *(Uihlein v Matthews,* 172 NY 154, 158). In other words, a negative easement does not entitle the owner of the dominant tenement to any use or enjoyment of the land subject to the easement to which he would not be entitled if the easement did not exist, but rather it permits him to limit or prohibit the owner of the servient estate from doing acts upon it which, were it not for the easement, the latter would be privileged to do (Restatement, Property, § 452).

The dominant estate here has been sold and is no longer owned by Furman, her heirs or members of her immediate family. For that reason the operative language of the easement is that: "both the grantees of Furman, their heirs and assigns, and the Morrisons, their heirs and assigns, shall have the right jointly to use and enjoy said land covered by this easement, but that neither may erect any fence or structure or use said land in any manner which will interfere with the air and light of either party". This language contains features of both affirmative and negative easements. To the extent that it permits the plaintiff to use and enjoy the land of the servient tenement it is affirmative and it gives him no right to prohibit general use and enjoyment by the Morrisons. To the extent that it prohibits the Morrisons from constructing any fence or structure which restricts plaintiff's light and air it is negative because plaintiff, as an adjoining landowner has no natural right to light or air, and, in the absence of such a negative easement, he could not complain that either had been cut off by the erection of structures on the defendants' land (1 NY Jur 2d, Adjoining Landowners, § 57).

Plaintiff does not seek to enjoin the defendants from

maintaining the fence on the ground that it violates the negative aspect of the easement by cutting off his light and air. Rather, he seeks an injunction because it constitutes a plain interference with his affirmative right to enter upon and use and enjoy the property in question. In this respect the instant case is entirely distinguishable from *Oneida County Mobile Home Sales v Niagara Mohawk Power Corp.* (63 AD2d 385, mod 47 NY2d 954), because there the court found as a fact that the placing of mobile homes within the area of an easement "did not unreasonably interfere with Niagara Mohawk's affirmative rights" to erect, operate, and maintain an electric power line across the servient estate (63 AD2d, at p 393). In that case the question was whether Niagara Mohawk could seek damages for breach of an implied negative easement that mobile homes would not be placed under its wires, despite the fact that they did not interfere with its affirmative rights. The Appellate Division, Fourth Department, held that since the suit was not brought within two years of the placement of the trailers it was barred by RPAPL 2001, which governs actions involving structures in violation of negative easements.

Even if RPAPL 2001 were applicable it would merely prevent plaintiff from seeking damages for, or obtaining an injunction requiring the removal of, the fence. It would not prevent him from seeking an injunction to prevent the defendants from interfering with his use and enjoyment of their property by gaining access thereto over or around the fence. Nor would it prevent the accrual of a new cause of action in the event that the present fence was removed and a new fence erected, or in the event of an alteration or enlargement thereof creating a different or more extensive violation (1963 Report of NY Law Rev Comm, pp 346-347). Similarly, if plaintiff obtained an injunction prohibiting defendants from barring his entry over or around the fence, its mere existence would then constitute an interference and inconvenience but not a complete obstruction to plaintiff's use or enjoyment, and would therefore not ripen into the extinguishment of his affirmative easement by adverse possession (see 2 NY Jur 2d, Adverse Possession, §§ 49, 50, 119). In this respect plaintiff's ease-

ment of use and enjoyment of the defendant Mary Morrison's side and back yard is different from an easement of way. A fence across the latter would utterly destroy its utility as a road, but the mere presence of a fence between the property of plaintiff and that defendant does not destroy the character of the area of the easement as a yard. If the defendants were restrained from acts of interference with plaintiff's access, other than the maintenance of the fence, he could still make use of the property.

■ The final point is whether the survey map of the boundary between the two pieces of property and of the easement area constitutes documentary evidence warranting dismissal of plaintiff's complaint. Special Term considered defendants' motion to dismiss under CPLR 3211 as one for summary judgment under CPLR 3212 and granted it upon this ground. It is our view that far from establishing a defense, the survey indicates that by building a fence along the entire boundary between plaintiff's property and theirs, defendants have interfered with his rights under the affirmative easement. We have not searched the record and granted summary judgment to plaintiff because, contrary to the view of Special Term, it is our opinion that the parties should have been notified of the court's intention to treat the motion as one for summary judgment (see CPLR 3211, subd [c]), and because the defendants may possibly be able to show either that they were justified in excluding plaintiff because of misuse of the easement (see 25 Am Jur 2d, Easements & Licenses, § 107) or his refusal upon demand to pay the percentage of real property taxes levied upon the servient estate as required in the instrument by which the easement was created. In this latter regard, if the exclusion preceded the demand, the plaintiff's refusal to pay a percentage of the taxes would be amply justified.

The order appealed from should be modified to the extent of striking the fifth and sixth paragraphs of the first cause of action asserted in the verified amended complaint and dismissing the second cause of action in its entirety. As so modified, the order should be affirmed, with $50 costs and disbursements to plaintiff.

GIBBONS, COHALAN and O'CONNOR, JJ., concur.

Order of the Supreme Court, Kings County, dated September 18, 1980, modified, on the law, by deleting the provisions dismissing the complaint in its entirety and substituting provisions dismissing (1) the fifth and sixth paragraphs of the first cause of action asserted in the verified amended complaint and (2) the second cause of action asserted in the verified amended complaint. As so modified, order affirmed insofar as appealed from, with $50 costs and disbursements to plaintiff.