**Dorothy E. TINKER, Plaintiff,**

v.

**A. Jacob ABRAMS, Defendant.**

**No. 84 Civ. 6064 (JES).**

United States District Court,
S.D. New York.

Aug. 1, 1986.

---

Smiley, Schwartz & Captain, New York City (Guy I. Smiley and Bruce Elliot Evans, of counsel), for plaintiff.

Colton, Weissberg, Hartnick, Yamin & Sheresky, New York City (David Aronson, of counsel), for defendant.

OPINION AND ORDER

SPRIZZO, District Judge.

## BACKGROUND

Plaintiff brought this action to recover damages for intentional infliction of emotional distress and custodial interference stemming from defendant's alleged abduction of plaintiff's three minor children. *See* Complaint at 2–5. Defendant has moved for summary judgment pursuant to Fed.R. Civ.P. 56. At issue is whether plaintiff's action is time-barred by the applicable statute of limitations.

The essential facts in this case are not in dispute. Plaintiff Dorothy Tinker and defendant A. Jacob Abrams were divorced in October of 1973. The divorce decree awarded the plaintiff physical custody of their three infant daughters under a joint custody arrangement. On June 28, 1974, the defendant took the children for what was to have been a one-month prearranged visitation. *See* Defendant's Statement Pursuant to Local Rule 3(g) ("Def. 3(g) Stmt.") at ¶ 4.[1]

Plaintiff alleges and defendant does not deny that he failed to return the children at the designated time and instead took them to live with him in San Diego, California without informing the plaintiff of their whereabouts. Plaintiff stated at her deposition that after the alleged abduction but prior to 1976, she contacted the Family Court, the District Attorney, the Bar Association and Children's Rights Inc., in attempts to regain custody of her children. *See* Plaintiff's Affidavit in Opposition ("Pl. Aff.") at 1–2; *see* Exhibit E to Defendant's Motion to Dismiss at 29–30 ("Def.Ex. E") (Plaintiff's Deposition).

It is clear and undisputed that, at least as early as June of 1976, plaintiff knew of her children's exact location—including their address and telephone number in Rancho Santa Fe, San Diego, California. *See* Def. 3(g) Stmt. at ¶ 5. Moreover, plaintiff stated at her deposition that she knew in 1970 that defendant was involved in a tuna fishing business in San Diego. *See* Def.Ex. E at 9–10. In 1976, plaintiff hired Jim Schwartz, a private detective, who informed plaintiff that her husband still had the tuna fleet operation. *See id.* at 15. Plaintiff bought Mr. Schwartz a plane ticket to California after Schwartz told plaintiff that he believed her husband was living in California with the children. However, Mr. Schwartz was never heard from again by plaintiff. *See id.* at 54. In May or June of 1976, the plaintiff hired Eddie Sanchez, another private investigator. *See id.* at 60. Plaintiff admits that at this time Mr. Sanchez told her that he had located the defendant and the children at Rancho Santa Fe and that Mr. Sanchez gave her defendant's phone number. *See id.* at 67–68.

When plaintiff called the defendant's phone number in June of 1976, her daughter Patricia answered the phone. *See id.* at 69. Plaintiff called that phone number more than once within the next year. *See id.* at 72; Def. 3(g) Stmt. at ¶ 6. Thereafter, plaintiff deliberately did not contact the children until December of 1983. *See* Def.Ex. E at 82; Def. 3(g) Stmt. at ¶ 7. Although the defendant and the children changed residences in California approximately once per year, their phone number continued to be the same as the number plaintiff had called throughout 1976. *See* Def.Ex. F at 41–42. (Patricia Tinker Dep.).

---

1. The Court notes that plaintiff has failed to file a statement of the material fact(s) as to which she contends there exist(s) a genuine issue(s) to be tried, as required by Civil Rule 3(g) of this Court. Therefore, pursuant to Rule 3(g), all material facts set forth in defendant's 3(g) statement are deemed to be admitted.

Plaintiff contacted Patrick Wall, Esq. in 1976, but did not retain him as counsel. Thereafter, plaintiff took no action until 1979 when she consulted Edward Morrison, Esq. *See* Def.Ex. E at 88. Morrison apparently advised plaintiff that she should retain a California lawyer or investigator. *See id.* However, plaintiff failed to consult with any lawyer until 1983, when she retained present counsel. *See id.* at 93. Plaintiff alleges that no attorney would take her case because of her inability to pay a fee. *See id.* at 99.

## DISCUSSION

Plaintiff commenced the present action on August 22, 1984. The defendant moves for summary judgment on the ground that the action is time-barred by New York's three-year statute of limitations for personal injury actions.[2] In opposition, plaintiff contends that summary judgment is improper because the tort of abduction is a continuing wrong, and that the statute of limitations therefore does not begin to run until the occurrence of the last wrongful act. Thus, plaintiff asserts that the claim

did not accrue until she saw her daughter Patricia in 1983.[3]

The continuing tort theory defers accrual of a cause of action. *See Karen v. State,* 111 Misc.2d 396, 398, 444 N.Y.S.2d 381, 384 (Ct. of Claims 1981). For example, the statute of limitations for false imprisonment begins to run only when the imprisonment ends. *See id.; see also Whitmore v. City of New York,* 80 A.D.2d 638, 639, 436 N.Y.S.2d 323, 324 (2d Dept.1981); *Collins v. McMillan,* 102 A.D.2d 860, 861, 477 N.Y. S.2d 49, 50 (2d Dept.1984); Restatement (Second) of Torts § 899 Comment C (1977). Similarly, under New York law, a claim for false arrest accrues when the plaintiff is released from jail. *See Singleton v. City of New York,* 632 F.2d 185, 191 (2d Cir. 1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981); *Dailey v. Smiley,* 65 A.D.2d 915, 410 N.Y.S.2d 468, 469 (4th Dept.1978).[4]

However, New York has not extended the continuing tort or successive tort theories to an action for abduction and intentional interference with a parent's rights to custody of her children, and it seems that

---

**2.** The parties agree that, pursuant to *Board of Regents v. Tomanio,* 446 U.S. 478, 483, 100 S.Ct. 1790, 1794, 64 L.Ed.2d 440 (1980), New York's statute of limitations for personal injury actions, N.Y.Civ.Prac. Laws & Rules ("CPLR") 214(5) (McKinney 1972), should apply. *See* Def. Memo at 2; Pl. Memo at 3.

**3.** An action to recover damages for personal injury in New York must be commenced within three years, unless New York law has specifically provided otherwise. *See* CPLR 214(5). CPLR 203(a) provides that "[T]he time within which an action must be commenced, except as otherwise expressly prescribed, shall be computed from the time the cause of action accrued to the time the claim is interposed." *See* CPLR 203(a). "Despite the general principle that a cause of action accrues when the wrong is done regardless of when it is discovered, certain wrongs are considered continuing wrongs and the statute of limitations runs from the last wrongful act." *See Leonhard, supra,* 633 F.2d at 613 (citing CPLR 203 note McKinney 1972) (McLaughlin, Practice Commentaries C203:1)). "If ... the wrong is continuing, so that each day gives rise to a new cause of action, then each day will also bring a new statute of limitations." *See* CPLR 203 note (McKinney) (1986 Corrective Cumulative Annual Pocket Part) (McLaughlin,

Practice Commentaries C203:1). Plaintiff contends that the abduction alleged here should be treated as such a continuing wrong.

**4.** New York has also recognized that some continuing wrongs give rise to successive causes of action. New York's Court of Appeals has held that an encroachment which was erected in 1939 and not discovered until 1960 constituted a continuing trespass, giving rise to successive causes of action which accrued anew each day of the wrong. *See 509 Sixth Ave. Corp. v. N.Y. City Transit Auth.,* 15 N.Y.2d 48, 255 N.Y.S.2d 89, 203 N.E.2d 486 (1964); *see also Rahabi v. Morrison,* 81 A.D.2d 434, 440 N.Y.S.2d 941, 945 (2d Dept.1981). Similarly, the rule in New York with respect to an ongoing public nuisance is that it accrues anew each day of the wrong. *See Kearney v. Atlantic Cement Co.,* 33 A.D.2d 848, 849, 306 N.Y.S.2d 45, 46 (3rd Dept.1969); *see also State v. Schenectady Chemicals,* 117 Misc.2d 960, 967, 459 N.Y.S.2d 971, 977 (N.Y. Sup.Ct.1983). With respect to misappropriation of trade secrets, each infringement gives rise to a successive cause of action for damages. *See Kistler Instruments A.G. v. PCB Piezotronics,* 419 F.Supp. 120, 122 (W.D.N.Y.1976).

New York would not do so.[5] Although plaintiff cites examples of the application of the continuing wrong theory by New York courts in trespass actions, the Court has been directed to no authority for the proposition that conduct of the type complained of here would be so treated.

Moreover, the Court is not persuaded that the trespass analogy is appropriate. For purposes of a statute of limitations analysis, the conduct complained of in this case is more analagous to conversion than it is to trespass, which requires only an "interference" with a person's property rights. Conversion, on the other hand, requires a more substantial deprivation, such as the taking or the exercise of dominion or possession inconsistent with the right of the owner. *See Sporn v. MCA Records, Inc.*, 58 N.Y.2d 482, 487, 462 N.Y.S.2d 413, 415, 448 N.E.2d 1324, 1326 (1983).[6]

A wrongful deprivation of a parent's right to dominion and custody of her children, which has allegedly continued unabated from 1974 to the present, is more than a mere "interference" with those rights and is, therefore, more closely analogous to a conversion than a trespass. *Cf. Sporn, supra*, 58 N.Y.2d at 487–88, 462 N.Y.S.2d at 415–16, 448 N.E.2d at 1326–27. Since New York law does not recognize conversion as a continuing wrong, *see id.*, it follows that, in a case involving a parent's abduction of a child, the continuing wrong theory should not be applied. *Cf. id.* ("mere assertion of a continuing right ... will not be sufficient to have the cause of action deemed a continuing trespass if the facts as pleaded indicate that the defendant's alleged conduct, if proven, would

constitute a taking of the property and a conversion of that property to his own").

However, even assuming that such an abduction could be construed as a continuing wrong, plaintiff's action would still be time-barred. *Cf. Leonhard v. United States*, 633 F.2d 599, 613–14 (2d Cir.1980), *cert. denied*, 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981). In *Leonhard*, a father alleged that federal officials violated his constitutional rights by removing and concealing his children from him as part of a witness protection program. *See id.* at 604–05. The Second Circuit held that conclusory allegations of repeated refusals by the government to tell the father the location of his children were not overt acts sufficient to sustain a continuing wrong theory. *See id.* at 614. The *Leonhard* court stated that "it is the initial concealment which would give rise to a right of action, and subsequent acts in furtherance and continuation of the concealment should not give rise to new or renewed causes of action. If we apply this principle, Leonhard's cause of action accrued in 1967 [when he learned of the removal and concealment of his children]." *See id.*

Similarly, in this case the defendant's concealment of the children ceased in 1976, when plaintiff learned of the whereabouts of her daughters. For purposes of extending the statute of limitations, it could have no effect thereafter, since plaintiff could have, at that moment, taken reasonable steps to secure custody of her daughters. No sound reason or policy would be served by extending the statute in a case where plaintiff's failure to do so was not a consequence of defendant's conduct, but of her own inaction.

---

**5.** Moreover, with respect to plaintiff's claim for intentional infliction of emotional distress, the only action of defendant which could possibly constitute the sort of extreme and outrageous conduct which plaintiff must establish to prevail on such a claim, *see Fischer v. Maloney*, 43 N.Y.2d 553, 557, 402 N.Y.S.2d 991, 992–93, 373 N.E.2d 1215, 1216–17 (1978), is the alleged abduction of the children. Any action based upon that conduct is clearly time-barred.

**6.** The Appellate Division, in *Sachs v. Cluett, Peabody & Co.*, 265 A.D. 497, 39 N.Y.S.2d 853 (1st

Dept.1943), *aff'd*, 291 N.Y. 772, 53 N.E.2d 241 (1944), used the following example to explain the distinction between the treatment of trespass and conversion for statute of limitations purposes: "If defendant hits plaintiff's horse repeatedly, plaintiff has a new cause of action upon each striking; but if defendant destroy's plaintiff's horse, or takes it and claims it as his own, plaintiff's right accrues immediately and he must sue within the period measured from that date—or never." *See Sachs, supra*, 265 A.D. at 501, 39 N.Y.S.2d at 857.

*Montgomery v. Crum,* 199 Ind. 660, 161 N.E. 251 (1928), relied upon by plaintiff, is factually inapposite. In that case, a mother who had been awarded custody of her daughter sought damages for the abduction of her child by her estranged husband and his parents. The abduction resulted in a nine-year separation between mother and daughter. In response to an assertion that the applicable two-year statute of limitations barred the mother's claim, the *Montgomery* court observed that "the statute of limitations will not begin to run until there is a cessation of the overt acts constituting the wrong." *See id.,* 161 N.E. at 259. In determining whether the evidence warranted a jury finding of "one continuous wrong," the court found persuasive plaintiff's evidence that: (1) defendants continuously moved the child from location to location out of the state and concealed her; (2) the considerable sum of money expended by the mother; and (3) the mother's diligent and continuous efforts during the nine-year period to obtain custody of the child. *See Montgomery, supra,* 161 N.E. at 258.

Thus, both *Leonhard* and *Montgomery* support the conclusion that the statute of limitations in the present case began to run no later than 1976, when plaintiff clearly and admittedly learned of the whereabouts of her children, and could have taken appropriate measures to assert her custody rights and any tort theories against defendant. *Cf. Leonhard, supra,* 633 F.2d at 614; *Montgomery, supra,* 161 N.E. at 251. Beginning in 1976, plaintiff was continuously in possession of a telephone number at which she could and did reach her daughters. *See* Def.Ex. F at 79, 91. However, plaintiff deliberately did not contact her daughters from 1977 until 1983. *See* Def.

3(g) Stmt. at ¶ 7; Def.Ex. E at 81, 84. *Compare Montgomery, supra,* 161 N.E. at 258.

Indeed, except for consultations with attorneys in 1976 and 1979, plaintiff took no action to regain custody of her children and certainly did not explore the possibility of a suit against defendant for tort damages. *See* Def.Ex. E at 91–92. Plaintiff's allegation that no attorney would take her case because of her financial inability to pay counsel fees is unsupported by evidence. According to her own testimony, plaintiff consulted with only three attorneys in connection with the matters referred to in the complaint, *see* Ex. E at 88, until 1983, when she found a law firm that took her case on a contingent fee basis. *See* Pl.Aff. at 2. In any event, the financial ability of plaintiff to obtain counsel is of no relevance to the statute of limitations issue. If the financial ability of a plaintiff to sue were a basis to extend statutes of limitations, the repose which such statutes are designed to achieve would be nullified.[7]

In any event, had plaintiff made a more intensive search for counsel during the limitations period, rather than remaining virtually inactive, it is reasonable to conclude that she might have found counsel. *Cf. Montgomery, supra,* 161 N.E. at 258 (mother made every conceivable attempt to obtain possession and custody of her children from time of abduction until filing of complaint). Furthermore, plaintiff's conclusory allegation that "defendant ignored every communication," *see* Pl.Aff. at 2, is not a sufficient allegation of an overt act that would defer accrual of her cause of action for purposes of delaying the running of the statute of limitations. *Cf. Leonhard, supra,* 633 F.2d at 614.

---

**7.** Plaintiff's assertion that she was ignorant of her ability to sue defendant for damages until 1983, when she found a lawyer who would accept the case on a contingent fee basis, *see* Pl.Aff. at 2, is contradicted by her deposition testimony. *See* Def.Ex. E at 80–81. However, even if true, her lack of knowledge of her cause of action against defendant would not toll the statute of limitations, unless defendant deliberately misled her in that regard. *See, e.g., Koh-*

*lasch v. New York State Thruway Authority,* 516 F.Supp. 769, 776 & n. 18 (S.D.N.Y.1981). Moreover, as noted above, plaintiff's asserted inability to retain counsel until shortly before she initiated this action, *see* Pl.Aff. at 2, does not excuse her untimely commencement of this action where, as here, she has demonstrated little or no diligence in pursuing her claim. *Compare Powell v. Zuckert,* 366 F.2d 634, 636–39 (D.C.Cir. 1966) (rejecting laches defense).

## CONCLUSION

Not later than 1976, plaintiff was apprised of all the facts with which she could have commenced the present action. Thus, at the latest, the applicable three-year statute of limitations began to run in June of 1976, and expired in 1979. Her complaint, filed in 1984, is time-barred. For all the foregoing reasons, defendant's motion for summary judgment must be granted, and the complaint is dismissed with prejudice. The Clerk of the Court shall enter judgment accordingly.

It is SO ORDERED.